*Aldis* and *Gadcomb* vs. *Eli N. Johnson.*

That the endorsee of a note not negotiable must follow the rules of the *law merchant* in making demand of payment, and giving notice of non payment in reasonable time.

The effect of a blank indorsement on such note.

THIS action was tried in the County Court, and was decided for defendant, and a bill of exceptions allowed and a case agreed upon, on which a hearing has been had this term. The exceptions and case agreed upon were as follows : "This was an action brought against defendant as endorsor of a note executed by *William N. Ryan*, & made payable to *Eli N. Johnson*, dated May 16th, 1823, payable in cattle on the 3d day of October, 1823, or in grain on the 3d day of January, 1824, on which was the following endorsement, viz : " For value received I hereby order the contents of this note paid " to *Aldis* and *W. O. Gadcomb*, and warrant the same demand " collectable. *Eli N. Johnson.*" The above endorsement was in blank, and without date, and filled up in court on trial. On the 5th day of January, 1824, the plaintiffs commenced a suit on said note in the name of *Eli N. Johnson*, against *William N. Ryan*, the maker of the note, and on the 19th day of January, 1824, recovered a judgment on said note for $87,88 damages and $2,54 costs, from which said judgment the said *Ryan* appealed to the county court ; and afterwards on the 25th day of February, 1824, said *Ryan* personally appeared before said justice and confessed judgment on the aforesaid judgment in said suit for damages and cost aforesaid, and on the 25th day of February, 1824, the plaintiff prayed out a writ of execution on said last mentioned judgment for $90,19 damages, and 25 cents cost, which said execution was put into the hands of the sheriff, and the said *Ryan* committed to jail within the life of said execution, and that immediately after the commitment of said *Ryan*, to wit, within two or three days, the plaintiffs gave notice to the defendant that said *Ryan* remained within the limits of said prison, and demanded payment.

It appeared further that said *Ryan* remained within the limits of the jail-yard until after the commencement of the present action—and that after the commencement of this action, *Ryan* committed

an escape, and departed out of the liber-    Franklin, Jan. 1828.

ties of the jail yard ; and that soon after the *Aldis et al. vs. Johnson.* bond was broken, the said *Eli N. Johnson* applied to *Swift* and *Smith*, and requested them to prosecute said jail bond, which was done, and a judgment obtained on said bond, at the September term of the County Court, 1826, and execution issued, and was at the time of the trial in a train of collection.  On the trial of the *general issue*, the court decided that the testimony did not show a sufficient demand and notice to entitle the plaintiffs to recover.  The records and files in the suit, *Eli N. Johnson* vs. *William N. Ryan*, were used as evidence on said trial, showing what service was made upon the writ, and the time of such service ; and the same are here referred to.  The said decisions of said court are excepted to by the ' plaintiffs ; and the foregoing exceptions are allowed, and the same may pass to the Supreme Court for a hearing.

TITUS HUTCHINSON,    *Chief Judge.*

JOEL BARBER, Jr.    *Assistant Judge.*

SAMUEL WEED,    *Assistant Judge.*

We hereby agree that what is said in the foregoing case about demand and notice, is as the fact existed, and to be considered as fully proved.

SWIFT and SMITH, *Attornies for plaintiff.*

SMALLEY and ADAMS, *Attornies for defendant.*

It was contended by the plaintiffs' counsel, That the note in question, not being negotiable, either by common law or statute, the rules applicable to negotiable notes and bills of exchange do not apply any more than to other *choses in action*, such as bonds, policies of insurance, or book debts, when the legal right remains in the assignor.  The purchaser or assignee acquires a certain equitable interest, which will be protected in law and equity. —1 *Sw. Dig.* 434.  There is a wide distinction between notes negotiable and notes not negotiable.  In the latter case, if the note is not paid at the time it is due, it is the dr· · of the holder to commence a suit and collect it if possible.  The endorsement by the payee of such a note, contains a power of attorney to the endorsee to pursue all legal measures for its collection, and apply the avails to his own use, and also that the note is due and col-

§

Franklin, Jan. 1828.  }  lectable with the use of due diligence.—

*Aldis et al.* vs. *Johnson.*  }  *Swift's Dig.* 434, 435.    The assignee may at any time, even in court, fill up the endorsement to this effect, and if not filled up, this will be deemed the legal construction of it.—*Sw. Dig.* 434.—*Chitty on Bills,* 117.—3 *Johns. cases,* 264.    It is sufficient to give notice to the endorser at any time after a failure to collect, and before suit brought.—*Sw. Dig.* 436. It is further contended in this case, that if a demand and notice were necessary, still it is contended that the defendant, by taking the jail bond given by *Ryan* into his own hands, and collecting the money on the same, has waived the notice.    In this case, the reason for a demand and notice has entirely failed, inasmuch as the endorser has himself collected the money on the note by him endorsed.

The defendant's counsel contended,  1. That this case is to be determined by the principles of the *mercantile law,* which are applicable to negotiable notes with a blank endorsement as between the endorser and endorsee.—4 *Mass. R.* 245, *Jones* vs. *Fales.*—8 *Mass. R.* 260, *Sanger* vs. *Stimpson.*

2. If this position is correct, the opinion of the County Court. must be sustained.    The declaration states that the note was endorsed by the defendant to the plaintiffs on the 1st day of January, and as there is no evidence to the contrary, this allegation must now be taken to be true.    No demand of payment of the maker was made until the 7th day of January; indeed there has been no demand at any time, unless the commencement of a suit is a demand.    It was the duty of the endorsees to have demanded payment of the maker on the day the note became due, or to have shown some excuse for having neglected to do so; but having done neither, all liability of the defendant as endorser is discharged.—11 *Johns.* 180, *Agan* vs. *McManus.*—11 *Johns.* 231, *Ireland* vs. *Kip.*—17 *Johns.* 25, *Merchants' Bank* vs. *Birch.* —*Bailey on Bills,* 191.

3. Notice of the non-payment of the note by the maker was not given to the defendant until some time in April, 1824, four months after the note became due : the maker, endorser, and endorsees, all residing in the same town.    No reason is assigned for neglecting to notify the defendant of the non-payment.    The de-

fendant is therefore exonerated from all li-
ability as endorser.

4. If the rules of the _mercantile law_ do not apply to the present case, and the defendant by a blank endorsement on a note not negotiable, is to be considered as having warranted the same to be due and collectable with the use of due diligence; yet from the facts disclosed in the case it clearly appears that the defendant is not liable.   The note became due on the 3d of January, 1824, a writ was served on the maker on the 7th by attaching real estate in the town of St. Albans, where all the parties resided. The plaintiffs thus having suffered three days to pass after the note became due without making any demand of payment, or causing any process to be served on the maker, or assigning any reason for the delay of either, have not used due diligence in the collection. —1 _Sw. Dig._ 435.

5. The plaintiffs have discharged the liability of the defendant by neglecting to levy the execution on the real estate attached on the orignal writ.—16 _Johns._ 41, _Lynch_ vs. _Reynolds._

6. There has been no failure in the collection of the note of the maker which would render the endorser liable.

Hutchinson, J. delivered the opinion of the court.—The question upon which this cause must turn is, whether the plaintiffs used such diligence in their demanding payment of the maker of the note, and giving notice back to the endorser, the defendant, as to keep good their right of action against him? As the dates are given in the declaration and case, the court must consider that the note was endorsed blank by the defendant to the plaintiffs a short time before it fell due, which was January 3, 1824; that it was sued on the fifth of the same January, the writ served on the seventh, by attaching the land of _Ryan_, the maker, and pursued to judgment and execution;—that _Ryan_ was committed to prison on the execution, and there remained until after this suit was commenced upon the endorsement;—that, two or three days after said commitment, and nearly four months after the note was payable, the plaintiffs gave notice to the defendant of the nonpayment of the note and demanded pay of him.   It is contended on the part of the plaintiffs that as this note was not negotiable, and as the plaintiffs sued and prosecuted the same to judgment and

Franklin Jan. 1828.    } execution, and that, probably, with as
*Aldis et al.* vs. *Johnson.* } much diligence and success, as would have
been used and acquired by the defendant.   This furnishes a legal
excuse for the neglect to give notice back of the non-payment.

This court having heretofore in the case of *Nash* vs. *Harring-ton*, 2 *Aikens' Reports*, 1, adopted the *law merchant* with regard to
notes that are negotiable, we are now urged to treat those not
negotiable as an exception to the rules of the *law merchant*, and
adopt those rules upon the subject which are peculiar to the state
of *Connecticut*.   The courts there consider the endorser of a note
not negotiable, as conveying the property in the note ; authorizing
the use of his name to collect by suit if necessary, and as war-ranting the same to be collectable by a due course of law with
due diligence ; and that all this course may be pursued before notice
back to the endorser.—1 *Sw. Dig.* 435.   We consider this not to
be the law of this state, and are not disposed to make any dis-tinction between those different instruments with regard to the
rights of endorsees.   We deem it most expedient to treat the en-dorser of such note, with blank endorsement, as the drawer of a
bill of exchange, the endorsee as payee, and the maker as drawee.
The endorser then, by his endorsement, requests the maker to pay
the note to the endorsee, who alone can controul it, while he holds
it, and who makes it his own and holds it at his own risk after
neglect to demand payment and give notice back to his endorser.
If the endorsement be made before the note is payable, demand
must be made as soon as payment is due, where the parties re-side in the same town, as in this case.   If the endorsement be
made after the note falls due, the demand of payment must be
made as if the note fell due the day of the endorsement ; and, in
all cases the notice back must immediately succeed the demand
and failure of payment ; that is, by the first mail, if the endorser
resides at a distance, and the same day if he resides in the neigh-bourhood.   There is no reason for any such distinction as the
plaintiffs claim as to the import of blank endorsements.   And it is
very important that some rule, well understood in society, should
be productive of uniformity in transactions of this nature, and in
decisions upon disputes growing out of the same.   And those who
wish to be governed by a different rule can make their own rule by

the terms of a special endorsement on each { Franklin, Jan. 1828.
note at the time of the transfer. But the en- } Aldis et al. vs. Johnson.
dorsee has no right to fill a blank endorsement with any special con-
tract or warranty, but only with an order to pay the contents to
him for value received.

The plaintiffs, not having used this kind of diligence in making
demand of payment and giving notice back, are not entitled to re-
cover.

The fifth point urged in the plaintiffs' brief would be of weight
and importance if supported by the facts in the case. But, by
recurring to the original files, which are refered to as a part of
the case, we discover that *Swift* and *Smith* were the attornies of
the present plaintiffs in procuring the judgment and execution in
favor of *Johnson* against *Ryan*. When, therefore, the case states
that *Johnson*, immediately after the escape of *Ryan*, applied to
*Swift* and *Smith*, and requested them to prosecute the jail bond, it
must not be understood that he endeavored to controul the bond,
but that he gave them notice of the escape and right of action on
the bond, and requested them to pursue the collection for the
benefit of the plaintiffs, or whom it might eventually concern.—
Moreover, the case shows that *Johnson* had not collected the
money, but it was only in a train of collection when this action
was tried in the county court; and if the attornies, *Swift* and
*Smith*, have since collected the money, it is their duty to pay it to
the plaintiffs and not to *Johnson*. The judgment of the county
court is affirmed with cost.

    *Swift* and *Smith*, for plaintiffs.
    *Smalley* and *Adams*, for defendant.