[No. 19233.    Department One.—February 28, 1894.]

JOSEPH HABER, RESPONDENT, *v.* MARTHA L. BROWN ET AL., DEFENDANTS. CAROLINE G. CARTER, APPELLANT.

NON-NEGOTIABLE NOTE—CONTINGENT PROVISION FOR ATTORNEY'S FEES.— A promissory note payable to the order of the payee is rendered non-negotiable by a contingent provision contained therein for the payment of attorney's fees in case of suit.

ID.—LIABILITY OF IMMEDIATE INDORSEE.—In respect to the immediate indorsee of the payee of a non-negotiable promissory note, the indorsement will ordinarily create the same liabilities and obligations as the indorsement of a negotiable note.

ID.—DEMAND AND NOTICE.—Demand and notice ought to be required in order to charge such immediate indorser, where the words written over the blank indorsement show that the signature was considered and treated by the indorsee as if it were an indorsement of negotiable paper.

ID.—PRESENTMENT OF NOTE.—A note not payable at any particular place is payable and should be presented for payment at the residence or place of business of the maker, or wherever he may be found, at the option of the presenter.

ID.—EXCUSE FOR PRESENTMENT.—It is only where the maker has no place of business or residence within the state, or where his residence or place of business cannot be ascertained with reasonable diligence, that presentment for payment is excused.

ID.—DILIGENCE REQUIRED—PLACE OF PRESENTMENT—DATE OF NOTE.— Merely looking for the payor at the place where the instrument is dated is not of itself due diligence, but presentment must be shown to have been made at the person's last known place of residence or business; and, if his removal from the place of date, and his acquisition of a new domicile in the same state, was previously known to the indorsee, demand must be made at his new place of residence.

ID.—INSUFFICIENT PLEADING—KNOWLEDGE OF MAKER'S RESIDENCE.—A complaint seeking to charge an indorser by notice of protest, which shows upon the face of the pleading that the note was not in fact presented at maturity to the maker, but seeks to excuse presentment merely upon the ground that the maker could not be found in the place at which the note was dated, and states no facts respecting the knowledge of the indorsees, or their agents, as to the actual place of residence or business of the maker of the note, and not alleging what was such last known place of residence or business, or that an inquiry or presentment was made thereat, is insufficient to charge the indorser.

ID.—AVERMENT OF DUE PROTEST—PRESUMPTION.—The allegation "that thereupon the note was duly protested for nonpayment," directly coupled with previous allegations showing nonpayment of the note to the maker, cannot be presumed to imply a presentment in fact, or to imply any other excuse for not presenting it to the maker than that previously alleged.

ID.—PLEDGE OF NON-NEGOTIABLE PAPER—TITLE—EFFECT OF INDORSEMENT. A mere indorsement of non-negotiable paper by way of pledge cannot operate as an assignment of the general title, so long as the pledge subsists, and must be restricted in effect to an authority from the pledgor to the pledgee, to enforce the obligation in his own name as trustee and agent for the pledgor, and to apply the proceeds in payment of the debt secured, accounting to the pledgor for any surplus collected; and the indorser of such paper by way of pledge is not chargeable as an indorser of negotiable paper.

ID.—TRANSFER OF PLEDGED NOTE—SATISFACTION—ELECTION OF PLEDGOR. The lien of a pledge is dependent upon possession; and where the pledgee transfers a note held in pledge as collateral security he must be deemed, at the election of the pledgor, to have taken it at its face value, in satisfaction of the debt for which it was pledged to him, and may be regarded as having pledged to his assignee his own personal responsibility, and not that of his pledgor; and no subsequent reassignment of such paper to himself will restore to him his original rights.

ID.—CONTRACT TO PAY INTEREST WHEN COLLECTED—APPLICATION OF PROCEEDS OF SALE.—Where the indorsees of a note and mortgage agreed to pay the indorser an amount of interest due and unpaid upon the mortgage, and compound interest thereon, "when the same should be collected on the note and mortgage," the proceeds of sale of the mortgaged property, after payment of costs and expenses of sale, should be first applied to the payment of such interest and compound interest to the indorser, in preference to any payment to the indorsees.

APPEAL from a judgment of the Superior Court of San Diego County.

The facts are stated in the opinion.

*David L. Withington*, and *E. E. Carter*, for Appellant.

*Hunsaker, Britt & Goodrich*, for Respondent.

VANCLIEF, C.—Action to foreclose a mortgage executed by defendant, Brown, upon certain lots of land situate in the city of San Diego, to secure her promissory note for four thousand dollars, dated "San Diego, California, September 10, 1887," and payable one year after date to the order of Caroline G. Carter, the appellant. The note contained a provision for the payment of counsel fees of five per cent on the amount recovered in case of suit.

The complaint contains two counts. The first alleges the indorsement of the note before maturity by Caroline G. Carter to the order of Dinkelspiel & Co., a firm consisting of Dinkelspiel, Josephi, and plaintiff, and a subsequent assignment by Dinkelspiel and Josephi of all their interest in note to the plaintiff, and avers, " that, at the maturity of said note, due search and inquiry were made for the maker thereof, the said Martha L. Brown, *at the city of San Diego*, in order that the same might be presented to her for payment, but she could not be found, and the said note was not paid." That thereupon the said note was duly protested for nonpayment, and notice of protest and nonpayment was given to said Caroline G. Carter.

The second count omits the allegations of indorsement, protest, and notice of nonpayment, and alleges, "that after the execution of said promissory note and mortgage, and before the maturity of said note, the said Caroline G. Carter assigned said note and mortgage to S. B. Dinkelspiel & Co., and in and by such assignment guaranteed the payment of said note to the said Dinkelspiel & Co."

The defendant, Caroline G. Carter, demurred to each count of the complaint generally, and specially demurred to the second count. Both demurrers were overruled. In her answer she denied the allegations of the complaint as to the efforts to present the note to Martha L. Brown for payment, and the allegation that she guaranteed the payment of the note; and alleged that the note was indorsed by her in blank, and delivered to

Dinkelspiel & Co., as security for an antecedent indebtedness of her husband, John H. Carter, to Dinkelspiel & Co., and without other consideration; and that in December, 1888, after maturity of the note, she assigned the mortgage and released all her interest in the note to Dinkelspiel & Co., in consideration of which they agreed to pay her two hundred and sixty dollars arrearage of interest due upon the note to December 10, 1888, out of the first moneys to be collected upon the mortgage.

The court found that the note was indorsed by the defendant, simply by the writing of her name—"Caroline G. Carter"—and so indorsed was delivered to Dinkelspiel & Co., as security for said antecedent indebtedness of John H. Carter, her husband, to Dinkelspiel & Co. and in consideration of an extension of time for payment of that indebtedness, and of the advancement of the sum of one thousand dollars to John H. Carter. The evidence shows that this advance of one thousand dollars was made prior to the delivery of the note to Dinkelspiel & Co., for the purpose of enabling John H. Carter to obtain the note from the California National Bank where it had been deposited as security for a note made by the firm of Carter and Baker to that bank, for the sum of one thousand dollars.

The court found that Caroline G. Carter did not guarantee the payment of the note otherwise than by her blank indorsement thereof. It further found, in the language of the complaint, the alleged search and inquiry *at San Diego* for Martha L. Brown, that she could not be found, the protest for nonpayment, and notice of protest and nonpayment *to* Mrs. Carter. It further found that in December, 1888, Mrs. Carter absolutely assigned and transferred the note and mortgage to Dinkelspiel & Co., in consideration of a credit of four thousand dollars to John H. Carter upon his indebtedness to them, and of their agreement to pay to her, when collected, the interest which had then accrued on the note (the first year's interest); but found that there was

no agreement to pay such interest from the first moneys collected. The court also found that it was understood between the parties at the time of the absolute assignment that Mrs. Carter was responsible upon her indorsement of the note and liable to pay the same, less the interest thereon to December 10, 1888.

The judgment was in favor of plaintiff, ordering a sale of the mortgaged property, and application of the proceeds: 1. To payment of costs of suit and expenses of sale; 2. To the payment to plaintiff of the principal and interest, less the first year's interest found due on the note; and 3. To payment to Mrs. Carter of the first year's interest and the compound interest thereon. And further ordering, that in case the proceeds of the sale should be insufficient to make the first two of the above-mentioned payments, a judgment for the deficiency be entered against Mrs. Carter.

Mrs. Carter appeals from the judgment on the judgment-roll and a settled statement used on her motion for new trial, the appeal having been taken within sixty days after the rendition of the judgment.

Appellant contends that the court erred in ordering a personal judgment against her, and in postponing the payment to her of the first year's interest, to that of the full amount due plaintiff.

1. The note is non-negotiable, on account of the contingent provision for attorney's fees therein contained. (*Adams* v. *Seaman*, 82 Cal. 636.) In the case of the *First National Bank* v. *Falkenhan*, 94 Cal. 141, it was held that "in respect to the *immediate indorsee* of the *payee* of a non-negotiable promissory note, the indorsement will ordinarily create the same liabilities and obligations as the indorsement of a negotiable note." If this rule, as stated, be strictly applied, the obligations of the payee, as an indorser, to the immediate indorsee must depend upon demand upon the maker at maturity or sufficient excuse for its absence, and notice of nonpayment to the indorser, both of which are essential. In a number of cases which enforce the rule

CI. CAL.—29

as stated, such conditional liability of the indorser is recognized (*Jones* v. *Fales*, 4 Mass. 245, 254; *White* v. *Low*, 7 Barb. 204; *Aldis* v. *Johnson*, 1 Vt. 136; *Parker* v. *Riddle*, 11 Ohio, 102), though in other cases it is held that the payee who indorses a non-negotiable note in blank may be held liable to his immediate indorsee as an absolute guarantor, and that his indorsee may write a guaranty, or absolute promise to pay the note over the indorsement, and that the indorser cannot require demand and notice of nonpayment. (*Ford* v. *Mitchell,* 15 Wis. 304; *Billingham* v. *Bryan*, 10 Iowa, 317; *Seamon* v. *Van Slyck*, 8 Wend. 404; *Cromwell* v. *Hewitt*, 40 N. Y. 491; 100 Am. Dec. 527.) In the present case, it appears that Dinkelspiel & Co. wrote no guaranty over the blank indorsement, but instead thereof wrote the words " Pay to the order of S. B. Dinkelspiel & Co.," and themselves indorsed the note to the order of the London, Paris, and American Bank, limited, which in turn indorsed it to the order of the Consolidated National Bank for collection, which latter bank caused the note to be protested for nonpayment, and notice thereof to be given to each and all of the prior indorsers.

The court has expressly found that there was no other guaranty of the note than by the indorsement thereof in blank. Dinkelspiel & Co., as immediate indorsees, having elected to treat the indorsement to them as if it was an indorsement of negotiable paper and not a guaranty, ought not to be allowed to alter the terms of the writing which they themselves placed above the blank indorsement. It is unnecessary to decide in this case whether demand and notice of nonpayment of a non-negotiable note indorsed in blank by the payee is required to be given in every case of a transfer of such note in order to entitle the immediate indorsee of the payee to recover thereon against the payee; but such demand and notice ought to be required where the words written over the blank indorsement show that the signature was considered and treated by the indorsee as if it were an indorsement of negotiable paper.

Applying this rule to the present case, the complaint is insufficient to charge the appellant as an indorser. It expressly shows upon its face that the note was not in fact presented at maturity to the maker, but presentment is sought to be excused merely upon the ground that the maker could not be found in San Diego, the place at which the note was dated; but the note was not by its terms payable in San Diego, though dated there, and under the law merchant, a note not payable at any particular place is payable and should be presented for payment at the residence or place of business of the maker, or wherever he may be found, at the option of the presentor; and it is only where the maker has no place of business or residence within the state, or where his place of business or residence cannot be ascertained with reasonable diligence, that presentment for payment is excused. The complaint is insufficient, because it states no facts respecting the knowledge or ignorance of Dinkelspiel & Co. and their indorsees or agent as to the actual place of residence or business of the maker of the note, and does not allege what was her last-known place of residence or business, or that any inquiry or presentment was made thereat. Merely looking out for the payor at the place where the instrument is dated is not of itself due diligence; but presentment must be shown to have been made at the promisor's last-known place of residence or business; and if his removal from the place of date and the acquisition of a new domicile in the same state was previously known to the indorsee demand must be made at his new place of residence. (*Wheeler* v. *Field,* 6 Met. 290; *Anderson* v. *Drake,* 14 Johns. 114; 7 Am. Dec. 442; *Hartford Bank* v. *Green,* 11 Iowa, 476.) The allegation "that thereupon the note was duly protested for nonpayment," being directly coupled with the previous allegations showing nonpresentment of the note to the maker cannot be presumed to imply a presentment of it in fact, or to imply any other excuse for not presenting it to the maker than that previously alleged, which is insufficient, for the reasons stated.

No waiver of protest is alleged in the complaint or found to exist, and the finding that at the time of the assignment and release of the pledged note and mortgage it was understood between the parties that the plaintiff was responsible upon her indorsement is not only outside of the issues made by the pleadings, but is not sustained by the evidence. The evidence discloses an understanding between Dinkelspiel & Co., and John H. Carter and Caroline G. Carter, that any extension of time granted to the vendees of the mortgaged property should "in no way affect any obligation" of either of them to said S. B. Dinkelspiel & Co., and further discloses that Dinkelspiel & Co. at the time of the assignment requested them to sign an absolute guaranty of "full and exact payment" of the note and mortgage, and to indemnify Dinkelspiel & Co. for all loss sustained by reason of its nonpayment, which Caroline G. Carter expressly refused to execute, and no extension of time was in fact granted.

2. The case has been discussed thus far upon the theory of the complaint, that the original transfer of the note in suit to Dinkelspiel & Co. was an absolute transfer thereof by indorsement in the ordinary course of business. But the answer, proofs, and findings show that the transfer was by way of pledge, or collateral security, to secure the indebtedness of John H. Carter and of the firm of Carter and Barker to Dinkelspiel & Co. The Civil Code expressly provides that "notwithstanding an agreement to the contrary, a lien, or a contract for a lien, transfers no title to the property subject to the lien." (Civ. Code, sec. 2888.) It is settled in this state that, as between the pledgor and pledgee, the general property in a pledge remains in the pledgor, notwithstanding an apparent transfer of legal title to the pledgee. (Cross v. Eureka Lake etc. Canal Co., 73 Cal. 306, and cases cited.) The pledgee is but a trustee for the pledgor (Wheeler v. Newbould, 16 N. Y. 398; Hawks v. Hinchcliff, 17 Barb. 492), and is accountable to the pledgor for any surplus realized above the amount

of indebtedness existing at the date of the enforcement of the pledge. (Civ. Code, sec. 3008.) The transfer of a pledged note and mortgage to the pledgee does not transfer the title any farther than to enable the pledgee to collect the note and mortgage from the maker thereof. (*Ponce* v. *McElvy*, 47 Cal. 159.) In no event, even under the law merchant, could an indorsement of negotiable paper by way of collateral security authorize any recovery against the pledgor beyond the amount remaining due upon the principal debt. (*Williams* v. *Smith*, 2 Hill, 301.) It is unnecessary to decide whether, under the code rule respecting the retention of title in the creator of any lien, regardless of the form of the transaction, the indorser of negotiable paper by way of pledge is liable to the pledgee as an indorser under the law merchant. But it seems clear, in view of the code provision, that a mere indorsement of non-negotiable paper by way of pledge should be restricted in effect to an authority from the pledgor to the pledgee to enforce the obligation in his own name as trustee and agent for the pledgor, and to apply the proceeds in payment of the debt secured, accounting to the pledgor for any surplus collected. It could not operate as an assignment of the general title so long as the pledge subsists, and could only operate as such in case of an agreement that the pledge should be extinguished, and the amount of the collateral security applied as a payment upon the debt secured, or in case of a transfer of the collateral security by the pledgee to third parties.

The Civil Code declares that "the lien of a pledge is dependent on possession" (Civ. Code, sec. 3988), and it is a rule applicable to collateral securities generally that if the pledgee transfers pledged paper to third persons, without authority of the pledgor, he will be deemed, at the election of the pledgor, to have taken it at its face value in satisfaction of the debt for which it was pledged to him, and may be regarded as having pledged to his assignee his own personal responsibility, and not that of his pledgor; and no subsequent reassignment of such

paper to himself will restore him to his original rights (*Hawks* v. *Hinchcliff*, 17 Barb. 502); and surely this must be true where the paper pledged is not negotiable.

It follows, I think, from the foregoing considerations, that plaintiff is not entitled to judgment against Mrs. Carter for any deficiency.

3. I think the proceeds of the sale of the mortgaged property, after payment of costs and expenses of sale, should have been applied next to the payment of the first year's interest and the compound interest thereon to Mrs. Carter, in preference to any payment to the plaintiff.

The question of preference is to be resolved solely by the contract between Mrs. Carter and Dinkelspiel & Co. The finding of the court that Dinkelspiel & Co. did not agree to pay that interest " out of the first money collected upon the said mortgage," was merely the court's construction of the contract, and therefore not the finding of a fact, but merely a conclusion of law. While it is true that the contract does not expressly say it shall be paid out of the first money collected, neither does the contract say it shall be paid out of the residue after payment in full to Dinkelspiel & Co. The language of the contract as found is, that Dinkelspiel & Co. agree to pay said sum to Caroline G. Carter, " when the same should be collected on said note and mortgage," without any other qualification than such as may be inferred from the circumstances and the consideration for the promise, all of which tend to show the intention of the parties to have been in accord with the ordinary meaning of the language used, namely, that the sum should be paid " *when* (as soon as) the *same* (that sum, not the whole amount due on the note) should be collected." The whole transaction was this; Mrs. Carter made an absolute assignment of a note and mortgage for four thousand dollars, drawing interest at the rate of thirteen per cent per annum, compounded quarterly, on which one year's unpaid interest had accrued, to Dinkelspiel & Co.; in consideration of which Dinkelspiel & Co. credited

to her husband's debt to them four thousand dollars, and agreed to pay her the amount of the then accrued interest when they should collect it. Had the maker of the note voluntarily paid four thousand dollars on the note without suit the law would have applied it, first to the payment of interest, in the absence of any agreement for a different application; and the same rule applies where the payment is enforced by sale of property on foreclosure of a mortgage, and should have been adhered to in this case, even conceding that the contract is silent as to the order in which the payment to Mrs. Carter should be made.

A new trial, however, is not necessary, since the only finding of fact not justified by the evidence is outside of the issues.

I think the cause should be remanded, with instructions to the lower court to modify the judgment in conformity with this opinion.

Temple, C., and Belcher, C., concurred.

For the reasons given in the foregoing opinion, it is ordered that the cause be remanded, with instructions to the lower court to modify the judgment in conformity with this opinion.

Harrison, J., Paterson, J., Garoutte, J.