[Civ. No. 743.    Third Appellate District.—September 26, 1910.]

## BARRETT-HICKS CO., a Corporation, Respondent, v. FRANK GLAS, Jr., and W. H. GLAS, Appellants.

MECHANICS' LIENS—NEW TRIAL—DECISION ON FORMER APPEAL—FINDINGS UNSUPPORTED—EFFECT OF GENERAL REVERSAL—PROPER ACTION OF TRIAL COURT.—Where a former appeal from a judgment involving the validity of mechanics' liens was disposed of by holding two findings of fact essential to support the judgment to be against the evidence, and the reversal of the judgment was general, without limitation, a new trial might have been had of all of the issues involved in the action; but the trial court pursued a proper course in limiting the new trial to the questions involved in such two issues and in effect approving the other proceedings not questioned and findings not disturbed on the former appeal. Such other proceedings and findings in effect remained a part of the record of the case, whether expressly adopted by the court or not.

ID.—"LAW OF CASE" ON NEW TRIAL—RELEASE OF SURETY ON CONTRACTOR'S BOND—RIGHT TO CLAIM AND ASSIGN LIEN—SUPPORT OF FINDINGS AND JUDGMENT.—Though the doctrine of the "law of the case" does not apply to the retrial of issues of fact, yet, where the evidence upon a new trial is the same as that upon the former appeal, upon which it was held that, under the evidence contrary to the findings, a surety on the contractor's bond was released by the change of the building from one story to two without his consent, and might claim and assign a lien thereupon to the plaintiff, the court, upon the second trial, upon findings sustained by the evidence, properly made the same ruling, and rendered judgment for the plaintiff for such assigned claim.

ID.—CLAIM OF LIEN BY PLAINTIFF—IMMATERIAL VARIANCE BETWEEN PLEADING AND NOTICE—REASONABLE VALUE—FIXED PRICE.—There is no material variance between the complaint of plaintiff alleging a contract to pay the reasonable market value of corrugated iron furnished for the building, and the notice of lien calling for a fixed price of five and one-half cents per pound, which was shown to be

14 Cal. App.—19

its reasonable market value, and to correspond with the total reasonable value alleged in the complaint. It is sufficient that the notice of lien was substantially true, which was all that was required to give it validity.

ID.—OBJECT OF STATUTE AS TO NOTICE OF LIEN—STATEMENT OF CONDITIONS AND TERMS OF CONTRACT.—The object of the statute in requiring the conditions and terms of the contract to be set forth correctly in the notice of lien is to inform the owner as to the extent and nature of a lienor's claim, and to facilitate investigation as to its merits.

ID.—TEST OF SUFFICIENCY OF NOTICE—NATURE OF VARIANCE.—The test as to the sufficiency of the notice with respect to the terms and conditions of the contract is whether such notice does or does not so far depart therefrom as to render it misleading, to the injury of the owner. If it does, the variance is fatal. If, however, there is a substantial agreement between the contract and notice of lien, so that there could not arise in the mind of the owner any misapprehension as to the extent and nature of the lienor's claim, then any technical variance which might appear would be immaterial.

ID.—EVIDENCE—NONPAYMENT—BURDEN OF PROOF.—It was not incumbent on the plaintiff to prove nonpayment of the amount of liens claimed; but the burden of proving payment rested upon the defendants. There is no change in this state of the common-law rule upon this subject.

ID.—ASSIGNMENT OF MONEYS ARISING UNDER CONTRACT—INDEMNITY TO SURETY AGAINST LOSS—NONLIABILITY OF SURETY—RIGHT OF LIEN. The assignment of moneys to become due under the contract by the contractor to the surety, by way of indemnity of the surety against loss, does not place the surety "in the shoes of the contractor," nor make him liable with the contractor for the performance of the contract, or to the owners, or laborers, mechanics and materialmen, there being no evidence that the entire contract was assigned to the surety, and it being established that the contractor was not, in the construction of the building, acting under the supervision or control of the surety, or subject to his supervision. Such assignment cannot affect the right of lien of the discharged surety.

ID.—LIEN FOR PUTTING ROOF ON BUILDING—ABSENCE OF LABOR ON BUILDING.—The fact that the discharged surety performed no labor in the construction of the two-story building cannot affect his right to a claim of lien for materials and labor furnished in putting a roof thereon.

ID.—LIEN OF SUBCONTRACTOR— DELEGATION OF LABOR.—The circumstance that the materials and labor furnished for the roof were supplied by the lien claimant as a subcontractor, and that the labor was not personally done by him, but was furnished by his employee, cannot affect the right of lien therefor.

ID.—ABSENCE OF VARIANCE BETWEEN COMPLAINT AND CLAIM OF LIEN—
GUARANTY OF ACCOUNT BY SURETY.—There was no variance between
the plaintiff's complaint and claim of lien and the evidence that the
surety guaranteed its account, which was a separate transaction
between plaintiff and the surety, with which the contractor had
nothing to do, and was no part of the terms and conditions of the
contract between plaintiff and the contractor. The guaranty had
reference only to the means adopted by the plaintiff to secure for
itself indemnity against loss in furnishing materials to the con-
tractor.

ID.—SALE SUBJECT TO MORTGAGE NOT DUE.—Though, where it appears
that mechanics' liens are both prior and subsequent to a mortgage
on the premises, subject to such liens for a debt not due, the
mortgage debt would have to be paid out of the proceeds of the
sale in order to do equity, yet where it appears that all prior liens
have been paid, the sale for subsequent liens must be made subject
to the mortgage debt.

ID.—ERROR IN FORM OF DECREE—NONAPPEAL BY MORTGAGEE—RIGHTS
OF SUBSEQUENT LIENHOLDERS TO OBJECT.—Where there is error in
the form of the decree in requiring the unmatured debt to be paid
out of the proceeds of sale by subsequent lienholders, though the
mortgagee does not appeal, the subsequent lienholders appealing may
object to the form of such decree.

ID.—MODIFICATION OF DECREE—FINDING OF SUBSEQUENT LIENS.—Where
the court has found that the mortgage lien is superior and prior
to any claim of lien against said building and premises of the
plaintiff herein, it is not necessary to reverse the decree for the
error appearing therein, but it will be modified accordingly.

ID.—LIEN OF DISCHARGED SURETY ENFORCEABLE UNDER FORMER DE-
CISION.—The claim of lien of the discharged surety on the con-
tractor's bond may be disposed of as valid against the contention
of appellants on the authority of the decision by this court on the
last appeal, the facts in the case being precisely the same as those
involved on that appeal.

ID.—UNPROVED OFFSET TO SURETY'S LIEN—ERROR NOT SHOWN.—It is
held that no error is disclosed by the record in refusal of the court
to allow evidence of an unproved offset to the lien of the discharged
surety set up in the answer. It does not appear that there was
any effort to prove such offset, or that any ruling of the court was
made thereon.

APPEAL from a judgment of the Superior Court of Ma-
dera County, and from an order denying a new trial.  H. Z.
Austin, Judge.

The facts are stated in the opinion of the court.

W. H. Larew, for Appellants.

L. L. Cory, for Respondent.

HART, J.—This is an action for the foreclosure of certain liens upon the building of the defendants, and this appeal is prosecuted from the judgment rendered and entered against said defendants, and from the order denying them a new trial.

Various phases of this litigation have been before this and the supreme courts on two previous appeals. (See *Burnett et al.* v. *Frank Glas, Jr., et al.,* 154 Cal. 249, [97 Pac. 423], and also *Barrett-Hicks Co.* v. *Frank Glas, Jr., et al.,* 9 Cal. App. 491, [99 Pac. 857].)

Counsel for respondent here, in his brief, presents an accurate and well-stated summary of the history of this litigation and of the facts thereof, and we shall, therefore, adopt counsel's statement as our own: The decision of the district court of appeal, affecting the parties to this appeal, is that of *Barrett-Hicks Co.,* Appellant v. *Frank Glas, Jr., et al.,* Respondents, 9 Cal. App. 491, [99 Pac. 856]. The decision of this court, deciding the issues in the case as to all parties, is *J. H. Burnett et al.,* Respondents, v. *Frank Glas, Jr., et al.,* Appellants, 154 Cal. 249, [97 Pac. 423].

"On November 9, 1903, the appellants in this case, Frank Glas, Jr., and W. H. Glas, entered into a contract with W. J. Sircy for the construction of a one-story and basement brick store building, for the sum of $7,320. The building was to be erected according to certain plans, drawings and specifications which were found to be a material part of the contract, but which were never recorded in the recorder's office. The contractor gave a bond upon the contract with M. R. Madary, one of the assignors of this respondent, and C. J. Craycroft, as sureties, the sureties guaranteeing the performance of the contract and the delivery of the building free of liens.

"Work was commenced under the contract and upon the completion of the building a large number of liens were filed, including one on behalf of M. R. Madary. Suits were brought upon these respective liens. Prior to the trial the suits to foreclose the liens were consolidated with the action brought by J. H. Burnett. The appeal decided by this court was one taken from the judgment rendered in the consolidated action.

The appeal in the case decided by the district court of appeal was taken by this respondent to review certain portions of the judgment materially affecting its rights.

"In the case of *Burnett* v. *Glas,* 154 Cal. 249, [97 Pac. 423], the judgment was affirmed, it being held by this court, among other things, as follows:

"(a) That the contract was void in that the plans, drawings and specifications had not been filed in the recorder's office; and also, because twenty-five per cent of the contract price was not made payable at least thirty-five days after the final completion of the contract.

"(b) That certain liens were paramount and certain liens subsequent to the mortgage upon said property in favor of the Commercial Bank of Madera, and that the lower court was justified in rendering its decree that the entire property be sold, notwithstanding the indebtedness secured by the mortgage was not due, and that the proceeds be applied in payment of the respective liens in accordance with their priority.

"(c) That certain allowances for attorney's fee and interest were erroneous; the judgment was modified by striking out these allowances, and in all other respects affirmed.

"The record on appeal, decided by the third district court of appeal, shows that this respondent had brought suit for the foreclosure of three separate liens, one in its own favor, one in favor of M. R. Madary assigned to it, and one in favor of J. A. Sircy. The lower court rendered judgment in favor of this respondent upon the assigned lien of J. A. Sircy, and rendered judgment against the respondent upon its personal claim, and the assigned claim of M. R. Madary. The lower court based its decision and awarded judgment in favor of the owners and against Barrett-Hicks Co. on its personal claim on the finding that the building materials were not furnished to W. J. Sircy by the respondent, but to M. R. Madary; and based its decision and rendered judgment against the respondent upon the assigned claim of M. R. Madary upon the ground that M. R. Madary was a surety, and as such was not entitled to enforce any lien against the property. The appellate court found both of these contentions to be unsound. That under the evidence the decision of the lower court was wrong; that the finding of the court that this respondent furnished the materials at the special instance of

M. R. Madary was not true and not supported by the evidence, and that as to M. R. Madary's claim, the evidence showed that he, as such surety, had been released from all obligation upon his bond for the reasons set forth in its opinion, and therefore was entitled to enforce a claim of lien against the property.

"The principles of law involving the rights of the respective parties having thus been adjudicated and determined, the issues presented in the action of this respondent against the appellants upon the personal claim of the respondent and the assigned claim of M. R. Madary came on regularly for trial, the result being that the judgment appealed from in this case was entered in favor of the plaintiff, the lower court awarding judgment in favor of Barrett-Hicks Company upon its personal claim, and also upon the assigned claim."

The findings and decree made and entered in the former trial affecting all other questions of fact but those involving the claim of the plaintiff and that of Madary, assigned to plaintiff, were not challenged on the former appeal, and, therefore, not disturbed by the decision reversing the judgment therein.

At the second or last trial, culminating in the judgment from which one of the appeals here is taken, counsel on both sides and the court tried the case upon the theory that there were only two questions of fact to be tried and determined, viz.: The question as to the validity of the personal claim and lien of the plaintiff and the question whether the claim assigned to it by Madary was valid. Upon this theory the court, therefore, adopted the unattacked and undisturbed portions of the findings and judgment made and entered in the former trial as parts of the findings and judgment made and entered as the result of the last trial.

The record here discloses no attempt on the part of the defendants to introduce any proof looking to the impeachment of any of the essential ultimate facts as to which findings were made at the former trial other than those involving the claims of the plaintiff here. But it is now objected in a general way that the court had no legal authority to adopt this course; that all the former findings and judgment were

vacated and set aside and became *functus officio* by the judgment of reversal entered by this court.

The court pursued the proper course under the circumstances. It is true that the judgment of reversal, though in reality involving, as seen, but two questions of fact, was in general language, and in no way limited the second trial to the issues of fact upon which the judgment solely rested, and had counsel for appellants chosen that course, all the material issues of fact tendered by the pleadings could have been gone into on the retrial. But, as stated, he, by the theory upon which he presented his case at the second trial, in effect approved the former proceedings and findings not disturbed by the decision of this court, and they, therefore, remained, so far as pertinent to the questions retried, a part of the record of the case, and would have been such whether they had been expressly adopted by the court or not. (*Duff* v. *Duff*, 101 Cal. 6, [35 Pac. 437]; *Chandler* v. *People's Savings Bank*, 73 Cal. 320, [2 Am. St. Rep. 812, 14 Pac. 864].)

On the first appeal of this case the principal contention of the appellant therein (the respondent here) was, as seen, that the evidence failed to support the findings of the court against the claims here in dispute. The decision by the trial court against the personal claim of Barrett-Hicks Co. was based upon the ground that the evidence disclosed that the materials furnished by it for the building of defendants were not so furnished "at the special instance and request of said defendants, . . . through their agent, W. J. Sircy, but that said materials aforesaid were furnished at the special instance and request of M. R. Madary, and were charged on the books of said plaintiff to said M. R. Madary, and the allegation in plaintiff's complaint in that regard is untrue, as is likewise the statement in its said notice and claim of lien that said materials were furnished to W. J. Sircy, the contractor," etc.

The finding of the trial court against the claim of lien of Madary, assigned to plaintiff, was founded upon the undisputed fact that said Madary was one of the sureties on the bond of the contractor to indemnify the owner. The bond, as is usual in such instruments executed in such cases, provided that the sureties would answer as such for the full performance by Sircy, the contractor, of all the terms and condi-

tions of the contract to be by him performed, ''and jointly and severally guarantee . . . the delivery of said building free from all liens that may be filed against the said contractor in the above contract, not exceeding the sum of $2,000.''

This court, on the former appeal, reviewing the evidence from which the foregoing findings were educed, held that they were not thus supported, and referring to the plaintiff's personal claim, declared that the proofs, without contradiction, showed that Sircy himself bought the materials and that Madary's part in the transaction was that of a mere guarantor. As to the defense against the assigned claim, this court held, and its ruling thereon was unquestionably correct, that the evidence disclosed that, while Madary was a surety on the bond guaranteeing the full performance by Sircy of all terms and conditions of his original contract with the defendants, he was absolved or released from all liability thereon by reason of a subsequent contract between Sircy and defendants executed before the completion of the contract guaranteed by the bond, by which a second story was to be added to the building, which, under the first contract, was to be but one story in height.

The theory of the defendants at the first trial and on the former appeal was that the added story came within the clause of the original contract providing that ''should the owners or the architect, at any time, during the progress of the work, request any alteration to or omission from this contract or the plans or specifications or either of them, they shall be at liberty to do so, and the same shall in no way affect or make void this contract; but the amount thereof shall be added to, or deducted from, the amount of the contract price aforesaid, as the case may be, by a fair and reasonable valuation. And this contract shall be held to be completed when the work is completed in accordance with the original plans, as amended by such changes, whatever the nature or extent thereof.''

Answering this contention, the court said: ''It is well-settled law that a surety may stand upon the strict letter of his bond, and that where the principal has, without the consent of the surety, materially violated the terms of the agreement for the performance of which the surety stands sponsor,

the latter is exonerated. . . . It would be unreasonable to hold that the effect of the bond was to guarantee the work done in the construction of a two-story building; for if we should take that view, it would follow that the owners might have converted the plans into a six-story building, and increased the cost four or five fold. The change to a two-story building was not decided upon until the one-story building was well toward completion, and the memorandum was not signed until December 24, 1903.'' (See *Barrett-Hicks Co.* v. *Glas et al.*, 9 Cal. App. 491, [99 Pac. 862]—a petition for rehearing in supreme court having been denied.)

We have carefully examined the record before us, and we find that substantially the same evidence was brought out at the second trial with regard to the claims in controversy as was adduced at the first trial, and, while we do not believe, as counsel for respondent contends, that the doctrine of ''the law of the case'' is applicable or may be invoked as to this point, there can be no ground for doubting that the evidence is abundantly sufficient to support the finding as to each of the claims involved in this appeal. We perceive no necessity for presenting here the evidence or even the substance thereof. As stated, there is no material difference between the evidence received at the first trial pertaining to these claims and that produced at the last trial.

But some other points are urged by appellants against the findings of the court. Some of these may be stated as they are presented in his brief by counsel for respondent, as follows:

''1. There is a variance between the allegations and the proof, in that the allegations of the first cause of action of the complaint and the statements of the lien specify a contract different from that supported by the evidence.

''2. That the respondent introduced no proof of nonpayment of the amount claimed to be due in the first cause of action.

''3. That M. R. Madary stands in the shoes of W. J. Sircy, and therefore cannot assert or claim a lien.

''4. That as Mr. Madary personally bestowed no labor or services, he therefore is not entitled to a lien, either personally, or as a subcontractor.

"5. That there is a variance between the claim of lien of the respondent and its complaint, and the evidence produced, in that the fact that Mr. Madary guaranteed the account was an essential part of the terms, time given and conditions of the contract.''

1. We are unable to discover a fatal or any material variance between the allegations of the complaint, setting forth in substance the statements in the recorded notice of lien, and the evidence disclosing the nature of the contract between the contractor and plaintiff for the materials furnished. The specific contention is that, while the allegation is that the respondent was to receive for said materials (corrugated iron) the *reasonable market value* of the materials so furnished, the evidence shows that such corrugated iron was sold and furnished for a definite or stipulated price expressly agreed upon by the parties.

The complaint alleges that the plaintiff "agreed to furnish certain corrugated iron for said building from time to time as demanded, and was to be paid therefor the *reasonable market value* thereof from time to time,'' etc.

Barrett, president of plaintiff corporation, testified, in part, as follows: "This iron was to be used on the awning; he [Sircy] told me how many sheets he would require; the price was five and one-half cents a pound; I figured it up at $89.10. . . . The reasonable market value of the iron was $89.10.''

Sircy testified that plaintiff "furnished the iron to me, shipped it to me, the iron was used in the construction of the Glas building. The price was $89.10; they were to ship it to me; they did so; they gave me a price on the material; that was a reasonable market price.'' The court found that the materials furnished by plaintiff were of the reasonable market value of $89.10, and this finding corresponds with the allegation of the complaint and the statement in the lien.

Conceding that the evidence shows that the price charged for the corrugated iron was definitely fixed and expressly agreed upon at the time it was sold to the contractor, it nevertheless further appears from the evidence that said price or sum constituted the *market value* of the materials at the time of the sale. "The statement in the notice of lien was, therefore, substantially true; which was all that was required to give it validity.'' (*Star Mill & Lumber Co.* v. *Porter,* 4

Cal. App. 474, [88 Pac. 499] ; *Wagner* v. *Hansen,* 103 Cal.
107, [37 Pac. 195].)

The object of the statute in requiring the conditions and
terms of the contract to be set forth correctly in the notice of
lien is to ''inform the owner as to the extent and nature of
a lienor's claim, to facilitate investigation as to its merits.''
(*Wagner* v. *Hansen,* 103 Cal. 107, [37 Pac. 195].)   And the
test as to the sufficiency of the notice with respect to the
terms and conditions of the contract is whether such notice
so far departs from the terms and conditions of the con-
tract as to render it misleading to the injury of the owner.
If it does, the variance is fatal.   If, however, there is a
substantial agreement between the contract and notice of lien,
so that there could not arise in the mind of the owner any
misapprehension as to the extent and nature of the lienor's
claim, then any technical variance which might appear would
be immaterial.

In *Star Mill etc. Co.* v. *Porter,* 4 Cal. App. 474, [88 Pac.
499], it is said: ''The notice is, indeed, incorrect in stating
as one of the terms of the contract that the claim was based
upon a *quantum meruit,* instead of upon a special promise to
pay a fixed amount; and this doubtless as a matter of plead-
ing would constitute at common law a material variance,
though hardly under existing practice.   (Code Civ. Proc., sec.
469.)   But, as we have already said, the technical doctrine
of variance has no application to a notice of lien, where all
that is required is that the statement of the terms of the
contract shall be substantially true.   There are, indeed, many
cases cited by the appellant, and other cases, which might
be conceived to hold a contrary doctrine.   (Citing a number
of cases.)   But these, or most of them, are distinguished from
the present case, in that it did not appear that the fixed price
stated was the market price.   In the absence of this fact, the
statement would be substantially false, and might mislead
the owner to his prejudice.   But where the fact appears, no
injury can result to the owner; nor can the misstatement be
regarded as material.''

It seems to us plain that the point we are considering here
comes clearly within the principle laid down in the foregoing
case.

2. It was not incumbent on the plaintiff to prove nonpayment, but the burden of proving payment rested on the defendant. (*Melone* v. *Ruffino,* 129 Cal. 514, [79 Am. St. Rep. 127, 62 Pac. 93].) It is there said: "It is not necessary to determine whether the evidence was sufficient to warrant the finding of nonpayment—if proof of nonpayment by plaintiff had been necessary. Where the plaintiff has proved the existence of a debt sued on—at least, within the period of statutory limitation—the burden of proving payment is on the defendant. That this is the rule at common law no one can doubt; and we have no statutory law changing it." (See, also, Greenleaf on Evidence; 1 Cowen & Hill's Notes to Phillips on Evidence, side p. 810; *Still* v. *Saunders,* 8 Cal. 281; *Lisman* v. *Early,* 15 Cal. 199; *Caulfield* v. *Saunders,* 17 Cal. 569; *Green* v. *Palmer,* 15 Cal. 412, [76 Am. Dec. 492].)

3. The contention that Madary "stands in the shoes" of Sircy, the contractor, and is, therefore, equally liable with Sircy for the proper performance of the terms of the contract, and, consequently, entitled to no lien for his claim, arises out of the circumstance of the assignment by Sircy to Madary of all moneys which would become due under said contract. The evidence shows that one of the considerations moving Madary to become one of the sureties on Sircy's bond was an agreement on the part of the latter that he would "assign and transfer to Madary all the money that was to grow due on the contract." "That," testified Madary, "was a consideration of my going on the bond. . . . The object of the assignment was to prevent the contractor doing as he pleased with his own money. Sircy was indebted to me at the time he made these various assignments." There was no evidence that Sircy assigned the entire contract to Madary, nor any showing that Madary was to reap any of the fruits of the contract, except in so far as he might furnish labor and materials to Sircy to be used in executing the terms of said contract.

The court found that Sircy was, in the erection and construction of the building, representative and contractor of the defendants, Frank Glas Jr. et al.; that Sircy was not at any time the agent of Madary in any respect in the erection of said building; that the assignment of all moneys due and to grow due on said contract to Madary by Sircy "was so

made that M. R. Madary, as bondsman of W. J. Sircy, could see to a proper application of all sums of money received, and that the same was applied in payment of labor performed and materials furnished for said building''; that said Sircy was not, in the construction of said building, acting under the supervision or control of Madary, or subject to his supervision.

These findings are well supported by the evidence, and the conclusion of law following therefrom, that Madary thus in no manner or degree became responsible or liable under the terms of the contract, is sound and unimpeachable.

In *Stone* v. *Owens,* 105 Cal. 292, [38 Pac. 726], a contract with the state for the construction of a seawall and wharf on the waterfront of the city of San Francisco was, in consideration of money advanced and to be advanced to the contractors, assigned by the latter to one Wood, with authority to demand and receive all warrants and moneys due or to become due under said contract. The question presented was, Did Wood become a party to the contract for the completion of the seawall and wharf by the assignment of the contract to him as collateral security for money loaned? The supreme court, answering this question negatively, says: ''As it appears that the contracts were delivered to Wood at the time they were assigned, and also appears on the face of the written assignments, as well as by extrinsic evidence, that the assignments were intended to operate as collateral security for the payment of debts, the legal effect of the assignments and the power of attorney to receive the warrants, and the money to become due under those contracts, was merely a pledge of those contracts creating a lien thereon subject to which the title to, and the general property in, the pledge remained in the pledgor (Civ. Code, sec. 2888; *Haber* v. *Brown,* 101 Cal. 452, [35 Pac. 1035], and cases there cited) ; and such pledge and lien implied no obligation of the pledgee to perform, or to pay for, the work which the pledged contracts required to be performed by the pledgors—the Owens brothers. And surely no such obligation is expressly imposed by those assignments.'' (See *Lisenby* v. *Newton,* 120 Cal. 571, [65 Am. St. Rep. 203, 52 Pac. 813] ; and *Canale* v. *Copello,* 137 Cal. 22, [69 Pac. 698].)

The case at bar, as to the point under present review, is no different from the case from which the foregoing excerpt is made. Madary merely accepted the assignment as indemnity against loss as a surety, and therefore to insure the proper application of the moneys due and to become due on the contract, and thus in no sense assumed any liability to the owners or the laborers, mechanics and materialmen.

4. There is no merit in the contention that, because Madary personally bestowed no labor or services on the building, he is not entitled to a lien for the labor furnished the contractor in putting on the roof for which he claims a lien. Madary was a subcontractor in the matter of putting on the roof, and not only furnished the material for that purpose, but delegated the work of putting on the roof to one of the regular employees in his planing-mill, or, as he called his employee, "our roofing-man."

It is claimed that the case of *Miltimore* v. *Nofziger Bros. Lumber Co.*, 150 Cal. 790, [90 Pac. 114], is an authority for the proposition that a subcontractor, though furnishing labor as well as material, cannot claim a lien for labor unless such labor was personally performed by him. We do not so read that decision. As we understand the language of the opinion, it merely holds that the constitutional provision (sec. 15, art. XX) with reference to the rank of each lien, where different liens are asserted against any property, places mechanics, materialmen, artisans and laborers in the same class, and their equality being thus established by said constitutional provision, which is self-executing, "the provision of the code that persons performing manual labor shall be first paid out of the proceeds of the property, and, in effect, that the materialmen shall have no lien, except upon such balance of the proceeds as may remain after the laborers are fully paid, clearly impairs, and in many cases will destroy, the right of materialmen given by the constitution," and "to that extent the statute is void." In other words, the only proposition dealt with in that case was the question of priority or the rank among different lienors.

It may be suggested that it would, indeed, be a singular principle that would sustain a provision of law to the effect that a subcontractor, who has agreed with the contractor to furnish certain materials for the structure and to put the

same in place, would not (himself perhaps without the skill to do the work in person) be entitled to a lien for the labor so performed because he had not himself personally performed it.

5. It is insisted that there is a material difference between the lien filed by respondent and as alleged in the complaint and the proved contract out of which the lienor's claim grew, and that such variance is fatal. The contention here is that the fact that Madary guaranteed the payment of respondent's claim was one of the terms or conditions between the respondent and the contractor. As counsel for respondent well says, the transaction between Madary and respondent, by which the former guaranteed payment by Sircy, involved a separate and distinct arrangement between the respondent and Madary, and with which the contractor had nothing to do. The guaranty had reference only to the means adopted by the plaintiff to secure for itself indemnity against loss in the transaction by which it agreed with Sircy to furnish him certain materials.

6. But we are of the opinion that the court, under the circumstances of this particular case, exceeded its authority by directing in its decree the payment, out of the proceeds of the sale of the premises, of the unmatured note secured by the mortgage on said premises executed by the defendants Glas to the Commercial Bank of Madera. That the appellants have a right to complain of this part of the decree, we have no doubt, notwithstanding the fact that the bank has not appealed from the judgment, and, therefore, urges no complaint against it.

The only other liens than that of the mortgage involved in this case are subject to the mortgage, the latter lien having attached to the premises prior to the time at which the right to the said other liens accrued. In *Burnett et al.* v. *Glas et al.*, 154 Cal. 249, [97 Pac. 423], there were liens paramount to the mortgage and others subject thereto, and the court, while holding that, under such circumstances, it was necessary to sell the whole property and pay the note secured by the mortgage from the proceeds of the sale, in order to protect the rights of all the lienors, although said note was then not due, said, through Mr. Justice Angellotti, that "if all the mechanics' liens had been paramount to the mortgage, or

if all had been subject thereto, the case would have been very different, and appellants might well have insisted that no provision be made in the decree for the payment of the mortgage. In the first case, the mortgagee would have to redeem from the lien sale to preserve its claim, and in the second case *the property would be sold subject to the mortgage."* This declaration may perhaps be correctly said to be *obiter,* but there can be no doubt that it involves a statement of the true rule in both the supposititious cases. The rights of the appellants as mortgagors would, therefore, be very much prejudiced by a decree which in effect would foreclose their mortgage before the debt to secure which said mortgage was given is due, and which might possibly result in a deficiency judgment being entered up against them before the debt is due, much to their injury. For illustration: It might happen, as it often does in such cases, that the property sold, as it would be, at a forced sale, would not bring its actual value. The payment of the mortgage debt under the circumstances appearing in the case of *Burnett* v. *Glas* was a matter indispensably necessary in order to preserve the rights of all lien claimants—those whose liens were superior to as well as those whose liens were subject to the mortgage. Here, all the liens being subsequent and subject to the mortgage, there is no just reason for the payment of the note secured thereby before it is due.

But counsel for the respondent takes the position, which was also approved and adopted by the court, that, inasmuch as no attack was made on the former appeal on any other portions of the findings and decree following the first trial than those involving the claims here in controversy, the judgment of reversal as to these later claims in no manner affected or disturbed the said other portions of the findings and decree, and that they were, therefore, affirmed, and that they now stand immune from attack here. We have already shown by the authorities that the court below was authorized to adopt such of the proceedings of the former trial as were not disturbed by the former decision of this court and as are necessary to support the judgment here, and as to which no new proceedings were had at the second trial. But it appears from the record on a former appeal, as seen, that there were certain liens which were paramount to the mort-

gage, and certain other liens the right to which accrued after the mortgage lien attached and were subject thereto. And it is admitted by counsel for respondent that, after the filing of the decision of the supreme court in *Burnett et al.* v. *Glas et al.*, all the liens which were paramount to the mortgage were paid and satisfied, thus eliminating them as a further bone of contention in this litigation. Upon the first trial of the present action, therefore, all the liens involved were subsequent and subject to the mortgage. The court, however, in the first trial of this case adopted nearly all the findings and decree filed and entered in the case of *Burnett et al.* v. *Glas et al.* And it has done likewise in the present action, and has added a finding with regard to the effect of the judgment in that case on the mortgage lien, that said "judgment has now become final." This conclusion, so far as the decision in the Burnett case is concerned, is doubtless sound; but in the present action the mortgage lien of the bank was made an issue by the complaint. It is alleged in the complaint that it is still a subsisting lien on the premises of the appellants, and that it is paramount to the other liens concerned here, and, all other liens heretofore litigated and adjudicated having been eliminated as issues in the present action, it must follow, as we have declared, that the decree of the court here directing the premises to be sold, and from the proceeds of such sale the note secured by the mortgage be paid, thus virtually foreclosing the mortgage before the debt it was given to secure is due, is erroneous to that extent.

But we see no necessity for a reversal of the judgment for this reason. The court found that said bank "holds a mortgage upon all the premises described in said complaint, which mortgage is superior to and prior to any claim of lien against said building and premises of the plaintiff herein," and upon this finding, and consistently therewith, and in accordance with the suggestion of the supreme court in *Burnett et al.* v. *Glas et al.*, the judgment may and should be so modified as that the direction therein shall be that the premises shall be sold, subject to the mortgage lien subsisting thereon in favor of the Commercial Bank of Madera, to satisfy the claims of the respondent.

7. The point that Madary is entitled to no lien for the reason that he is a surety on the contractor's bond may be

14 Cal. App.—20

disposed of against the contention of the appellant on the authority of *Barrett-Hicks Co.* v. *Glas et al.,* 9 Cal. App. 491, [99 Pac. 856]. The facts in this case upon said point are precisely the same as those in the cited cases, which, as seen, involved the appeal from the judgment entered after the first trial of the present case.

8. Counsel's statement that the court refused to receive evidence offered by the defendants in support of their alleged offset to Madary's claim is not borne out by the record. We have not succeeded in discovering in the record any evidence of any effort on the part of the defendants to establish or prove the setoff alleged in their answer, or any ruling of the court on any such proposition.

We have, with much care, examined all the important points urged by appellants, and have found no reason for disturbing the judgment and order, except in so far as that the former should be modified in the respect hereinbefore suggested and pointed out.

The court below is hereby directed to modify the judgment so that it will, for the purpose of satisfying the liens of the respondent herein, direct the sale of the premises involved in this action, subject to the mortgage lien of the Commercial Bank of Madera, and as so modified the judgment as well as the order will be affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on November 25, 1910.