[Civ. No. 1478.  Third Appellate District.—May 1, 1916.]

OLSON–MAHONEY LUMBER COMPANY (a Corporation) et al., Respondents, v. DUNNE INVESTMENT COMPANY (a Corporation) et al., Appellants.

Mechanics' Liens—Building Contract—Abandonment by Contractor—Amount Applicable to Liens—Rule Prior to Code Amendment.—Where a building contract had been abandoned by the contractor prior to completion of the work, the portion of the contract price applicable to the liens of other persons than the contractor was, prior to the repeal of section 1200 of the Code of Civil Procedure in the year 1911, the difference between payments made to the contractor and the value of the work and materials done and furnished at the time of such abandonment, including materials then actually delivered on the ground, "estimated as near as may be by the standard of the whole contract price," and not by the actual value of such work and materials.

Id.—Time of Filing Lien—Cessation of Labor—Pleading and Evidence.—Where in an action for the foreclosure of a mechanic's lien, it is alleged in the complaint that there had been a cessation of labor for a period of thirty days, which, if true, would have shown that the lien was filed too late, and it appears from the evidence introduced without objection, and the admissions of the answer to the complaint that there had not been such a cessation, and also that no notice of cessation had ever been filed of record, the averment of the complaint may be disregarded and the finding of the court upon the evidence accepted.

Id.—Pleading—Omission to Allege Terms of Contract—Evidence of Lien—Effect of.—An objection that the complaint in an action to foreclose a mechanic's lien failed to allege that the lien contained a statement of the terms, time given, and conditions of the con-

tract, cannot be considered on an appeal from the judgment, where no demurrer was interposed to the complaint and the lien, which contained such statement, was admitted in evidence without objection.

ID.—COMPLAINT AND LIEN—LACK OF VARIANCE.—There is no variance between the complaint in an action to foreclose a mechanic's lien and the lien itself, sufficient to justify a reversal of the judgment, where it is alleged in the complaint that the contractors agreed to "pay the plaintiff the reasonable value of the material [lumber and mill work] in cash and upon delivery," and the lien recited that the agreement was that the materials were to be paid for upon delivery in accordance with the prices carried out against the various items, and that the materials were of the reasonable value as in the notice set forth.

ID.—LUMBER USED FOR "CONCRETE FORMS"—RIGHT TO LIEN.—Lumber furnished to be used for "concrete forms" which did not enter into or become a part of the building, is lienable, where it is shown that the building could not have been erected without the use of lumber made into such forms into which the concrete was poured, there to remain until thoroughly "set" for fifteen or twenty days.

ID.—CESSATION OF WORK AND COMPLETION OF BUILDING—CONTRADICTORY AVERMENTS—EFFECT OF ANSWER.—Contradictory averments in or statements not true in the complaint, as to cessation of work and completion thereof by the contractor, when at variance with the findings, are not fatal to recovery, where the answer cures the contradiction of misstatements, and the findings are as alleged in the answer and supported by uncontradicted evidence.

ID.—ORDER CONSOLIDATING ACTIONS — EFFECT UPON DEFECTIVE PLEADINGS.—Where actions for the foreclosure of mechanic's liens are consolidated, the effect of the order of consolidation is to unite the causes of action so as to constitute one cause of action and one pleading, and the allegations in one complaint will remedy defects and supply omissions in another.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

Mastick & Partridge, Bartlett & Langdon, and Charles A. Christin, for Appellants.

Corbet & Selby, Morrison, Dunne & Brobeck, Wright & Wright, Olney, Pringle & Mannon, J. R. Pringle, Robert R. Moody, Frank A. Duryea, Arnold W. Liechti, Olin L. Berry, Neal Power, George F. Hatton, Gus L. Baraty, W. C. Webb, Hartley F. Peart, and D. Hadsell, for Respondents.

CHIPMAN, P. J.—Fourteen separate complaints were filed to enforce mechanics and materialmen's liens, and by order of the court were consolidated and tried in one action. The plaintiffs in eleven of these several complaints are respondents and the appeal is here under the above title. Judgment was entered in favor of plaintiffs and from this judgment defendants appeal.

Defendants Condon and McGlynn were the contractors for the work; certain named persons defendants were owners of the property on which the building in question was erected, and defendant Dunne Investment Company was the owner of a lease executed by said owners, and erected said building in compliance with the terms of said lease. The building is situated on the northwest corner of Stockton and Ellis Streets, San Francisco.

The complaints were filed in the latter part of the year 1909 and were brought to issue by answers in 1910 and, on January 4, 1912, came on for trial, and findings of fact and conclusions of law were made on June 27, 1912, and judgment was entered on that day. Notice of appeal was served and filed July 27, 1912. Transcript on appeal was filed in the supreme court May 15, 1914. Appellants' brief was filed September 15, 1914, and respondents' brief was filed May 11, 1915. The cause was transferred to this court and papers filed here December 17, 1915, and appellants' reply brief filed here January 18, 1916. It thus appears that more than two years expired after the actions were commenced before they were brought to trial. Nearly two years elapsed thereafter before transcript was filed in the supreme court. A year more passed before respondents' brief was filed, and appellants' reply brief was not filed until January 18, 1916, at which time the cause was submitted. We take the liberty of calling attention to the record as typical of many cases coming by transfer to this court as showing that the delay in reaching judgments on appeals in many cases is not, as is popularly believed, the fault of the appellate courts, but of the attorneys in the cases, brought about by stipulations which the courts feel bound to respect.

The attack is first made upon the finding upon which the judgment is based for the reason that it ignores the element of proportion to the whole contract price; that the evidence is insufficient "to sustain the finding even as to the amount

and that there is no finding of the ultimate facts, but finding No. 10 is only a conclusion of law." Appellants then assail the proceedings in each of the eleven cases on various grounds, some of which are common to all of them while other grounds are urged to particular cases.

The contract price for the building was $52,750, and the contract, with its plans and specifications, was duly recorded before the work was commenced. Work commenced under this contract October 26, 1908, and continued until July 15, 1909. The contractors being unable to complete the building, the Dunne Investment Company gave three days' notice, as provided in the contract, to furnish the necessary labor and materials to finish the building, which the contractors being unable to do, the Dunne Investment Company employed one Charles Wright to complete the job. The contractors had received, when they abandoned the work, $31,-397.50. The liens filed amounted to about twelve thousand dollars.

The contract provided that payments for the work should be made on the first of the month "as the work progresses, in installments, based upon the monthly estimates of all work done and material furnished and paid for in the building, up to and including the last day of the preceding month, in sums equal to seventy-five per cent of the value of said work done and material furnished, to be estimated by the architect, provided that no more than seventy-five per cent of the whole contract price shall be paid up to the time of the completion." There was the usual provision deferring payment of twenty-five per cent. "The monthly estimates of the architect, however, subject to correction by him in any subsequent monthly or in his final estimates. Serving merely as a basis for payments on account they are presumed to be only approximate."

Finding 10 is as follows: "That the value of the work and materials already done and furnished by said Condon and McGlynn on July 15, 1909, under said contract, including materials then actually delivered or on the ground, estimated by the standard of the whole contract price, under said contract, was and is $41,863.33."

The court found that there was the sum of $10,465.83 subject to the various liens, being the difference between the amount of the work and materials done and furnished, namely, $41,863.33, and the amount paid to the contractors,

namely, $31,397.50. That is, the payment in excess of the certificates given by the architect of seventy-five per cent of the work as it progressed, as provided in the contract, was the sum of $10,465.83 and was subject to liens in accordance with the rule enforced in the case of *Olson-Mahoney Lumber Co. v. Maxwell,* 18 Cal. App. 668, [124 Pac. 100].

It is well settled that, prior to the revisory statute of 1911 (Stats. 1911, p. 1313), under section 1200 of the Code of Civil Procedure, the actual value of the work and materials is not the test, but the value "estimated as near as may be by the standard of the whole contract price." (*Hoffman-Marks Co. v. Spires,* 154 Cal. 111, [97 Pac. 152]; *Duffy Lumber Co. v. Stanton,* 9 Cal. App. 38, [98 Pac. 38]; *Olson-Mahoney etc. Co. v. Maxwell,* 18 Cal. App. 668, [124 Pac. 100].)

Appellants contend that the value of the work and materials as found by the court represented the actual value and not the value estimated by the standard of the whole contract price, and that the court reached its estimate by a mathematical calculation, to wit, by dividing $31,397.50, the amount paid the contractors, by .75, thus giving exactly the sum found, namely, $41,863.33. "Other than this mathematical calculation," it is claimed, "there is not a word of evidence to sustain the finding."

Witness Applegarth was the architect of the building and made the estimates of the work as it progressed and issued certificates therefor. He testified "that $31,397.50 was three-fourths of the value, or possibly a little less than three-fourths of the value, of the portion of the work done by the Condon-McGlynn Company on the Dunne Building, estimated by the contract price for the whole. We were conservative always so as not to overstep the limit. So I am sure that it was not more than three-fourths of what they had done estimated by the price of the whole." Again, he testified: "These certificates were our estimates of the value of the work done in the period covered by the certificate estimated by the contract price." Again: "We issued our certificates on the basis of three-fourths of the value of the work done estimated by the whole contract price." He testified that he helped superintend the construction of the building, and was at that time more familiar with the cost of the work required to be done on the building than at the

time he was testifying (two years later). He testified: "In giving the certificates we investigated the cost of doing what had to be done there and it was fresh in my mind when I gave the certificates, and the certificates I made at the time were my estimates at that time of three-fourths of the value of what had been done there, measured by the contract price for the whole. The contract price was less than the reasonable value of the contract for the building in my judgment." He also testified: "Leaving out the contract price of the Dunne Building under the Condon & McGlynn contract, the reasonable market value of what the Condon-McGlynn Company did before they ceased work there was about $47,-000.00" Later in the course of the trial, the architect revised his estimate, reducing it from forty-seven thousand dollars to $35,736.50, whence by applying the rule in *Hoffman-Marks Co.* v. *Spires,* appellants derive $30,785 as the true value estimated on the basis of the contract price and, therefore, it is claimed there was nothing subject to the lien.

Witness Charles Wright, who took the contract to complete the building, testified that the actual value at abandonment was $32,850. The testimony of this witness on cross-examination showed that he underestimated the cost of different parts of the work very materially, and that his figures given for various items entering into the cost of completing the building were unreliable, and for reasons shown his estimate of such cost did not represent the reasonable cost of completing the building under the original contract. It was alleged by defendants, in their verified answer to each of the complaints, that they had paid to the contractors "a sum equal to 75% of the value of said work done and material furnished as estimated by the architect, and that the said sum was at no time more than 75% of the value of the work and materials already done and furnished, estimated by the standard of the whole contract price," and that the amount so paid was as already stated. Appellants say as to this averment in their answer that it "is not binding, in view of the fact that the evidence, as a whole, establishes that these payments were in reality 75% of the value of the amount actually in the building."

Section 1200 of the Code of Civil Procedure directs that the value of the labor and materials done and furnished at the time of abandonment shall "be estimated as near as may

be by the standard of the whole contract price.'' Any just method of arriving at this result may be adopted. There was evidence warranting the court in finding that the value of the labor done and materials furnished when abandonment occurred was greater than seventy-five per cent of the value as estimated by the court, so that appellants cannot complain that the amount was excessive. Just to what mental or mathematical process the court resorted it seems to us immaterial if the result was justified. It may be, and probably was the fact, that the court was satisfied with the architect's testimony that the certificates given by him could safely be assumed as a basis for its finding, especially as he had testified that the value of the labor and materials done and furnished was forty-seven thousand dollars, and in view also of the admissions of the answers as well as the architect's testimony, that this seventy-five per cent ''was at no time more than 75% of the value of the work and materials already done and furnished, estimated by the standard of the whole contract price.'' The estimate made by the architect was not, as claimed by appellants, for actual value but, as was admitted in the answers, and as testified by the architect, was a value ''estimated by the contract price.'' We must assume that the court considered all the evidence in the case and was, we think, justified therefrom in making the finding it did, although it happens to be and probably was based upon the architect's certificate. Finding 10, *supra,* is, we think, a finding of fact and not a conclusion of law, as claimed by appellants.

It is further claimed that the court failed ''to find the value of the work left undone'' which, it is insisted, was essential ''in estimating the amount subject to liens in cases where the contractor has not finished his contract.'' We understand our supreme court to have held that a finding as to the cost of completing the building is not necessary. (*Scheerer & Co.* v. *Deming,* 154 Cal. 138, [97 Pac. 155] ; *Ganahl Lumber Co.* v. *Weinsveig,* 168 Cal. 664, [143 Pac. 1025].) In the Scheerer case, the court said it was proper as matter of evidence, to consider this fact in determining what the value is. We must presume that the court did consider the evidence before it on this fact.

We come now to the attack made upon the several claims separately.

## OLSON-MAHONEY LUMBER COMPANY'S CLAIM.

The objections raised to this claim are: 1. That the complaint does not state a cause of action in this: (a) it shows that the lien was filed too late; (b) that it does not allege the value of the labor and materials in the building and on the ground at the time of the abandonment, based on the whole contract price, or contain "even an allegation of a fund subject to liens"; (c) the complaint "fails to allege that the lien contained a statement of the terms, time given, and conditions of the contract," as required by section 1187 of the Code of Civil Procedure. 2. That finding No. 6 is contrary to the admissions in the pleadings. 3. That the lumber charged for was used for concrete "forms" and did not form part of the building. 4. That there is a material variance between the complaint and lien, between the complaint and the evidence, and between the lien and the evidence.

It was alleged in the complaint that, on July 20, 1909, the "said contract was abandoned before the completion thereof and there was on said date an entire cessation of labor upon said unfinished contract and upon said unfinished building or structure" and, on said date, the defendant Dunne Investment Company entered into the occupation of said building and ever since has been and now is in the use thereof; that said cessation from labor upon said contract and upon said unfinished building or structure and said use and occupation of said unfinished building by said owner, Dunne Investment Company, continued for a period of thirty days and at the time of said cessation from labor there was in the hands of defendant, Dunne Investment Company, after deducting the payments actually due and made under said contract for the value of the work and materials already furnished, estimated according to the whole contract price, sufficient to pay the claim and lien of the plaintiff herein." It is alleged that the notice of lien was duly verified and recorded December 14, 1909, and is made part of the complaint "and was filed within the time allowed by law." It is also alleged that no notice of the cessation of work on the building or of abandonment of work was ever filed in the office of the recorder.

The court found that there was an entire cessation of labor on the building on July 18, 1909, and that there never had been any notice of cessation of labor filed for record.

Several of the complaints alleged, and the court found, that within thirty days (in fact, within a few days) defendant "did enter upon said uncompleted building, exclude therefrom said Condon & McGlynn and all subcontractors . . . and said defendant did proceed to procure other materials and labor . . . and did complete said building . . . on November 16, 1909, and there was at no time a cessation of labor for thirty days on said building between said October 21, 1908, and said November 16, 1909."

Appellants say: If the allegation is true that there was a cessation of labor for thirty days after July 20, 1909, as alleged, the time for filing liens would commence to run August 19th, and the right to file a lien would at most expire ninety days thereafter. Hence the complaint did not state a cause of action because, as therein stated, the lien was filed December 14th. Attention is also called to the allegation in the complaint that defendant entered into occupation and use of the building on July 20, 1909, which, it is claimed, brings the case directly within *Robison* v. *Mitchel,* 159 Cal. 581, 591, [114 Pac. 984].

While the court found, as alleged in the complaint, that there was a cessation of labor on July 18, 1909, it found, as we have seen, that no notice thereof had been filed of record, and the court also found that there was no cessation of labor for thirty days on said building and the same was completed November 16, 1909. This plaintiff filed its lien on December 14, 1909, and was in time, if we may follow the findings of the court instead of the averments of the complaint. In considering this and other of the objections, it is to be noted that there was no demurrer to the complaint, no motion for nonsuit upon the close of plaintiff's testimony, and no motion made for a new trial. In defendants' answer it was alleged that the contractors abandoned the work on July 15, 1909, "whereupon the said defendant entered upon the said work, excluded the said Daniel E. Condon and Chas. J. McGlynn and their men and forthwith proceeded to procure other materials and labor and entered into another contract for said work, to wit: a certain contract with one Charles Wright," who agreed to complete the building according to the plans and specifications of the original contract. This contract was dated August 4, 1909, in which the contractor agreed "to enter upon the performance of the work on the 5th day of August,

1909, and to steadily proceed with and hasten the same to completion.'' The evidence showed that in fact there was no cessation of labor for a period of thirty days; that the contractor, Wright, carried out his contract, and in so doing must have been in possession of the building; and that defendant did not ''enter into the occupation and use of the building'' otherwise than to exclude the original contractors and to arrange for the completion of the building. No question was raised at the trial or objection to evidence as at variance with the pleadings. In this condition of the record we are fully warranted in disregarding the averment of the complaint that the cessation of labor continued for a period of more than thirty days and accepting the finding of the court. Appellant relies on *Robison* v. *Mitchel,* 159 Cal. 581, [114 Pac. 984]. In that case the complaint alleged and the answer confirmed the allegation, that the contractor ceased work on October 18th, and that the plaintiff thereafter, to wit, on November 19th, ''undertook the completion of his said dwelling and proceeded to complete the same.'' The court held that the finding that ''this cessation of labor did not continue for a period of thirty days'' was not a finding within the issues, and being ''in conflict with the admissions of the pleadings, cannot be considered.'' In the case cited, however, ''the owner filed for record his verified notice of cessation, as contemplated by the opening paragraph of section 1187 of the Code of Civil Procedure,'' declaring in said notice that the work had been abandoned. It was admitted that the lien ''was not filed within time if the notice of·cessation and abandonment filed upon November 19, 1906, set running the statutory period for filing the lien.'' This was a case where the statutory notice had been given by the owner, and it undoubtedly started the running of the statutory period for filing the lien, unless the facts were that the work.had not ceased for that period and ten days thereafter, as was alleged in the notice of abandonment. Under the peculiar facts of that case the trial court felt warranted in finding that there had not been a cessation of labor for the period of thirty days, thus disregarding the admissions of the pleadings, which the supreme court held was unauthorized. In the case here the finding has the support of uncontradicted evidence, and of the admissions of the answer, and the further very important fact that no notice of cessation of labor was

given.  The case cited, it seems to us, not only fails to support appellants' contention, but rather demonstrates its fallacy.

The complaint alleged as follows: "At the time of said cessation from labor, there was in the hands of the defendant, Dunne Investment Company, after deducting the payments actually due and made under said contract for the value of the work and materials already done and furnished, estimated according to the whole contract price, sufficient money to pay the claim and lien of the plaintiff herein." It is now urged against the sufficiency of this averment that it does not allege that defendant had "any fund *subject to liens.*" Defendant states in its brief "it may be that this plaintiff *intended* to allege that it had in its hands and subject to liens sufficient money to pay the claim, but the complaint does not say so." Had plaintiff's failure to express its intention been pointed out by special demurrer no doubt the additional allegation would have been made.  The record shows, however, that the fact here omitted constituted one of the issues tried without objection, which we think cured the defect.

The objection that the complaint "fails to allege that the lien contained a statement of the terms, time given and conditions of the contract," as required by section 1187 of the Code of Civil Procedure, is, we think, satisfactorily met.  In the first place, the lien was admitted in evidence without the objection now urged being made.  The complaint alleged that the notice of lien was filed, giving the date, and that it "contained, among other things, a description of the property thereby sought to be charged, as hereinbefore set forth, a statement of the names of the owners or reputed owners of said land and building or structure, to wit: [giving the names] . . . and said notice also contained a correct statement of the demand of plaintiff for said materials furnished after deducting the just claims and offsets."  It is then stated that the notice was duly recorded and reference is made to it and it is made part of the complaint.  The lien contains a statement of the terms, time given and the conditions of the contract.  The complaint and notice of lien must be read together as the latter is distinctly made part of the complaint.  (*Newell* v. *Brill,* 2 Cal. App. 61, [83 Pac. 76]; *Coss* v. *MacDonough,* 111 Cal. 662, [44 Pac. 325].)  In the absence of a demurrer, and in view of the fact that no objection was made to the introduction of the lien in evidence, and that

there was no denial in the answer of plaintiff's averments, the point, in our opinion, should not now be considered.

It is objected that there is a variance between the complaint and the lien, the complaint and the evidence, and between the lien and the evidence. The lien states that the contractors "requested claimant to furnish lumber and mill work for said building and agreed to pay for the same upon its delivery; that claimant, at the special instance and request and in accordance with the agreement of said [contractors] furnished lumber and mill work for said building on the dates hereinafter mentioned to the amount and extent presented by the various sums set opposite the respective dates, viz.": (Then follow the items showing date, quantity of material and mill work and price.) "No time was given and there were no other terms or conditions of the said contract." It is then stated that claimant performed its agreement "and supplied said lumber and materials as specified herein and said materials are of the reasonable value of $2,902.99, and the same were actually used in, upon and about said building." The complaint alleged that, for said lumber and mill work, the contractors "agreed to pay the plaintiff the reasonable value thereof, in cash, and upon the delivery of said lumber and mill work; that no time was given and there were no other terms or conditions to said contract except such as the law implies; . . . that the reasonable value of said lumber and materials is set opposite the respective dates as follows": (Then follow the items as in the notice of lien.) The evidence showed that the lumber was sold at a fixed price agreed upon with the contractors. "That the lumber and mill work furnished by the Olson-Mahoney Lumber Company for the building in question were furnished at the reasonable market price prevailing at San Francisco at the time the lumber and mill work were furnished." The introduction of the lien was objected to "on the ground that there is a variance between the evidence and the lien." In the decision rendered by this court in *Barrett-Hicks Co.* v. *Glas*, 14 Cal. App. 289, [111 Pac. 760], it was said in the opinion by Mr. Justice Hart: "The object of the statute in requiring the conditions and terms of the contract to be set forth correctly in the notice of lien is to 'inform the owner as to the extent and nature of a lienor's claim, to facilitate investigation as to its merits.' . . . And the test as to the sufficiency of the notice with re-

spect to the terms and conditions of the contract is whether such notice so far departs from the terms and conditions of the contract as to render it misleading to the injury of the owner. If it does, the variance is fatal. If, however, there is a substantial agreement between the contract and notice of lien, so that there could not arise in the mind of the owner any misapprehension as to the extent and nature of the lienor's claim, then any technical variance which might appear would be immaterial.'' In that case the contention was that while the complaint charged that plaintiff was ''to receive for said materials [corrugated iron] the reasonable market value of the materials so furnished, the evidence shows that such corrugated iron was sold and furnished for a definite or stipulated price agreed upon by the parties.'' Of this contention the court said: ''Conceding that the evidence shows that the price charged for the corrugated iron was definitely fixed and expressly agreed upon at the time it was sold to the contractor, it nevertheless further appears from the evidence that said price or sum constituted the market value of the materials at the time of the sale. The statement in the notice of lien was, therefore, substantially true, which was all that was required to give it validity.''

In the present case it seems to us that anyone reading the notice of lien would see that the agreement was that the materials were to be paid for, upon delivery, in accordance with the prices carried out against the various items, and that the materials were of the reasonable value as in the notice set forth, for it states that reasonable value was as the price shown. The complaint stated that the agreement was to ''pay the plaintiff the reasonable value thereof, in cash, and upon the delivery of said lumber and mill work.'' The evidence was that the prices were both the market value and the reasonable value as well as that the agreement was to pay a price agreed upon. We do not think that the notice of lien was insufficient, nor do we think there was any variance as claimed by appellant such as would justify a reversal of the judgment. (See *Blanck* v. *Commonwealth Am. Corp.*, 19 Cal. App. 720, 726, [127 Pac. 805], and cases there cited.)

It is next objected that the lumber furnished by plaintiff was used for concrete ''forms'' which did not enter into or become a part of the building and hence no lien attached. Appellant rests its point in its opening brief upon the case of

*Stimson Mill Co.* v. *Los Angeles Traction Co.,* 141 Cal. 30, [74 Pac. 357]. That case was decided in 1903, before concrete came into general use in the construction of buildings and it involved conditions wholly unlike those connected with concrete structures. The contract was for the erection of a bridge to consist of five spans and the balance of steel or wood. Except as to the steel spans the bridge was completed, but some delay arose in obtaining steel for the uncompleted part, and a temporary structure was agreed upon of timber over which the cars could run. "This structure rested upon planks laid on the ground and was not in any way physically connected with the bridge, except that on it was laid the permanent track consisting of stringers, ties and rails." It was soon after replaced by the steel structure originally contemplated, the "effect being to leave the track supported by the new steel structure in place of the wooden structure removed." Part of the lumber furnished by plaintiff went into this temporary structure and was afterward carried away by the contractors; and it was claimed by defendant that plaintiff's claim of lien should be reduced by this amount. The lower court held otherwise but the supreme court reversed the judgment. It was said in the opinion: "It is settled by many decisions in this state that to entitle a materialman to a lien under section 1183 of the Code of Civil Procedure the materials must be furnished to be used, and must be strictly used, in the construction of the building or other structure against which the lien is sought to be enforced [citing cases]; and this we understand means the materials must be used, not merely in the process of construction, but 'in the structure'—that is to say, they must be used as the materials of which it is constructed." (Citing cases.) Strictly applied, the rule here laid down would exclude the lumber used for "forms" in constructing a concrete building, for it does not constitute a part of "the materials of which it is constructed." The question seems not to have been passed upon by our supreme court. Its wide application justifies its careful consideration.

The evidence was that this building could not have been erected without the use of lumber made into forms into which the concrete was poured there to remain until thoroughly "set," that is, for a period requiring, as the evidence showed, from fifteen to twenty days. The lumber was then removed

and was of no value thereafter. The evidence was that some of it was given away; none was used for another job and the contractors advertised in the daily papers to get rid of it for firewood. The contract called for a reinforced concrete building to be erected by the use of wooden forms. The provision was: "Forms must be constructed so as to properly sustain the total weight of the concrete floors and beams during construction without deflection and shall be thoroughly braced and held in place to avoid any delay during construction to allow of the setting of the concrete." After making specific provision as to how the lumber was to be used and what kind was required, the contract provided: "Forms shall be so constructed that their inner surface shall conform strictly to the dimensions called for by the plans. . . . No form design shall be adopted or the lumber sizes collected (selected?) without the approval of the architect and the architect's approval does not relieve the liability of the contractor for the strength of the forms." We mention these provisions as showing the intimate connection of the "forms" with the erection of the structure and their indispensability.

In the case of *Pacific Sash and Door Co.* v. *Bumiller,* 162 Cal. 664, 667, [41 L. R. A. (N. S.) 296, 124 Pac. 230], where materials were furnished for the alteration of a building, it was held: "Lard-oil applied to the threads of joints of pipe used in the structure, insulated or covered electric wire used for drop lights attached thereto, paste for soldering joints, asbestos comprising a part of the electric switch-board, all constitute parts of the structure and a lien may be asserted therefor. Some soapstone was used on the inside of pipes, as a lubricant, to facilitate the pulling of wires through the pipes. This, being a part of the work of construction, we think it may also be considered as a part of the material used in construction, for which a lien may be claimed." Soapstone as a lubricant constituted "no part of the materials of which the building was constructed," as was the test in the Stimson Mill Co. case, *supra,* but it "was material used in the construction" of the building which was the test in the Pacific Sash & Door case, *supra,* and should, we think, be the test here. In thus holding we are but applying the familiar rule that the language of a statute must be construed so as to adapt it to changing conditions the result of improved methods and the progress of inventive arts. In its reply brief

appellant cites other cases in support of its contention. *Kennedy* v. *Commonwealth,* 182 Mass. 480, [65 N. E. 828], was an action by bill of equity which under the statute was maintainable "if the petitioner have a claim that might be a subject of mechanic's lien if the structure belonged to a private owner." The statute provided security "for all labor performed or furnished and for all materials used in such construction or repair." The contractors agreed to furnish material for and to construct all the concrete foundations and arches required for the construction of a pumping station and gate house at Spot Pond in Storeham." It appeared that the lumber "did not enter into the construction of the pumping station and gate house as a part of the permanent structure, but was bought and used again for a similar purpose in another place and, after being so used several times, was removed by the purchasers, some of it being finally sold for firewood and the rest being carried to the yard of the purchasers in Boston." It was held that plaintiff could not recover. "To acquire a lien for materials under the Pub. Sts. c. 191, it is necessary," said the court, "to show that the materials will form a part of the completed structure—that they will enter into it and become a part of the realty."

In *Darlington Lumber Co.* v. *Westlake Const. Co.,* 161 Mo. App. 723, [141 S. W. 931], where the facts were substantially the same as in the present case, the St. Louis court of appeals deduced the following rule: "Where certain material is provided for by the contract in erection of a structure, and is furnished and used accordingly, and is, either in whole or in part, consumed in its use, the materialman is entitled to a lien for the material thus consumed in the erection of the structure to the extent of the consumption of its reasonable value, regardless of the fact whether or not such material formed a permanent part of the structure when completed. Consumption of value means the depreciation in the market value of the material by the use provided for by the contract."

In *Barker & Stewart Lumber Co.* v. *Marathon Paper Mills Co.,* 146 Wis. 12, [36 L. R. A. (N. S.) 875, 130 N. W. 866], the contract was to build a dam and materials were used in the construction of a temporary coffer-dam the erection of which was necessary to the permanent dam. The contractor abandoned the work and the owner took possession of the work, using for it the material left by the contractor includ-

ing that in the coffer-dam. About one-sixth of the material was destroyed by use, and the major portion of the planking when removed was capable of use in some other similar dam, and had, at the time, a market value of four or five dollars per thousand, but, after the removal, the owner used it in tramways and in planking and after the completion of such use it had no value except for firewood. At the completion of the work there would remain about fifty per cent of the lumber furnished, a large share of which would be unfit for anything but fuel, and the balance fit for use only in other dams and worth about five dollars per thousand. The planking cost sixteen dollars per thousand and constituted about three-fourths of the lumber claimed. The hardware used in the coffer-dam was of no value except as scrap iron. It was held that there was such a consumption of materials in the erection of the coffer-dam as to entitle the materialman to a lien on the permanent dam under the statute giving a lien to a materialman who furnishes any materials "for, or in or about the construction, erection, repair," etc., of any structure which becomes a part of the freehold. *Kennedy* v. *Commonwealth,* 182 Mass. 480, [65 N. E. 828], *supra,* was much relied upon by appellant in that case, as to which the court said it was apparent that "the materials were regarded as appliances or tools." Said the court: "So far as the concrete forms are concerned, we are inclined to agree that, where such forms are removed and are intended to be used and in fact are used again in other buildings, they should properly be regarded as appliances." In speaking of the cases where the value of explosives used in preparing the ground or rock for the structure and liens have been granted, the court said: "In these cases the liens have been granted upon one general principle or idea, namely, that where the material is used directly upon the work or structure itself, instrumental in producing the final result, and is actually consumed in the use, it may be said in every true sense it has entered into and forms a part of the contemplated structure." The opinion easily distinguishes the case from one where "coal is used in portable engines, or oil in lubricating building machinery, or food eaten by the laborers." "They are at least one step further removed from the actual work of construction. They have neither physical contact nor immediate connection with the structure at any time."

The logic of the decision in cases where powder is used 'does not,'' said the court, ''depend upon the special character of the material, nor upon the extreme rapidity of its consumption, but upon the fact that it is consumed necessarily in the process of constructing the building or other structure, and that its life has gone into the fabric of the structure as effectually as has the stone or cement or the lumber which retains its existence as a part of the structure.'' The principal case as to explosives is *Schaghticoke Powder Co.* v. *Greenwich & Johnsonville Ry. Co.*, 183 N. Y. 306, [111 Am. St. Rep. 751, 5 Ann. Cas. 443, 2 L. R. A. (N. S.) 288, 76 N. E. 153]. A lien was allowed in such a case in *Giant Powder Co.* v. *San Diego Flume Co.*, 78 Cal. 193, [20 Pac. 419]. The question, however, was not discussed. Judge McFarland dissented, stating, among other grounds, that a ''materialman cannot have a lien for exploded powder after, like the 'unsubstantial pageant' in The Tempest, it has 'melted into thin air, into thin air.' ''

*B. F. Avery & Sons* v. *Woodruff*, 144 Ky. 227, [137 S. W. 1088, 36 L. R. A. (N. S.) 866], was a consolidated case in which it was agreed as to one of the claims that of the lumber used in forms for the concrete building being erected, ''nothing remained of any of said lumber but about 10 per cent, which was in a cut-up, sawed-up, and dirty condition, such remnants being the molds (forms) knocked to pieces.'' The Kentucky statutes provide: ''A person who performs labor or furnishes materials in the erection, altering, or repairing a house, building, or other structure . . . or for the excavation of cellars . . . or for the improvement in any manner of real estate . . . shall have a lien thereon.'' The court said: ''If the lumber had been furnished to make a scaffold, molds, or forms, with the intention of using them in the erection of that building, and then carry them away and use them in constructing other buildings, then no lien would attach, as they would be regarded as a part of the appliances of the workmen, and would occupy the same place as a hammer, saw, or other tool used by the workmen, for which no lien is allowed by the statute (some states do, however, allow liens for scaffolds). These appellees furnished material to be used in the erection of a building which was as necessary as the sand, cement, water, or other material. In fact, the building could not have been erected without lumber to be used for the purpose for which

appellees' was furnished." In a note the editor takes occasion to refer to *Darlington Lumber Co.* v. *Westlake Constr. Co.*, 161 Mo. App. 723, [141 S. W. 931], a Missouri case, and *Barker & Stewart Lumber Co.* v. *Marathon Paper Mills Co.*, 146 Wis. 12, [36 L. R. A. (N. S.) 875, 130 N. W. 866], the Wisconsin case, and, while saying that they are in the minority, remarks: "They can hardly be cast aside and disregarded for that reason, for at this writing [1912], they are about the last words on this peculiar phase of the mechanics' lien law, and are based upon a sound distinction which has always existed and whose observation (observance?) progress now makes desirable."

Further pursuit of the question is deemed unnecessary. We do not think a general rule could be safely stated to govern all cases where lumber is used in making forms for concrete work in the construction of work contemplated by the mechanics' lien law. Each case must be governed by its own fact. This much, we think, however, can be said, and it is as far as the exigencies of the present case require; that, under the circumstances or facts shown, plaintiff is entitled to a lien for the materials it furnished and the mill work necessary for the preparation of such materials for use.

## WESTERN BUILDING MATERIAL COMPANY'S CLAIM.

To this claim it is objected: 1. That the first two counts are contradictory, the first alleging an abandonment for thirty days, on July 14, 1909, and the filing of a lien on September 15; 2, the second alleging that the *contractors* (not the defendant) completed the building and that the lien was filed December 2, 1909. As to the first count it is pointed out that the court found against the cessation of labor for thirty days and hence the lien was prematurely filed; as to the second count no cause of action is stated "because there is no attempt whatever to allege a fund subject to lien"; that there is a material variance between the complaint and the lien and between the complaint and the evidence.

Respondent calls attention to the fact that the complaint was filed prior to the decision in *Robison* v. *Mitchel*, 159 Cal. 581, [114 Pac. 984], under such decisions as *Johnson* v. *La Grave*, 102 Cal. 324, [36 Pac. 651], holding that the contract was deemed abandoned when there had been a cessation

of work by the original contractor for a period of thirty days. After the decision in *Robison* v. *Mitchel,* a second lien was filed within thirty days after the completion of the building, "but only one suit was brought, both liens being pleaded as separate causes of action." The second lien was the one found by the trial court to be valid.

It is true that the findings are contrary to the allegations of the complaint: (1) That there was an abandonment of work for thirty days on July 14, 1909, and (2) that the building was completed by the contractors. The court found against the averment as to cessation of work and also found that the building was completed by defendant and not by the contractors. But this was in strict accord with the averments of the answer many times repeated, and in accord with averments in the complaints in the consolidated action. No pretense was made at the trial that the contractors completed the building, and it was not disputed at the trial that there was not a cessation of work for a period of thirty days. We do not think that contradictory averments in or statements not true in the complaint when at variance with the findings should be held fatal to recovery, where the answer cures the contradictions or misstatements, and the findings are as alleged by the answer supported by uncontradicted evidence. Allegations omitted or defectively stated may be cured or supplied by the defendant in its answer. (31 Cyc. 714; Bliss on Pleading, 437; *Donegan* v. *Houston,* 5 Cal. App. 626, 632, [90 Pac. 1073] ; *Shively* v. *Semi-Tropic etc. Co.,* 99 Cal. 259, [33 Pac. 848].) It would be a vain thing to reverse the judgment on these grounds in order that the respondent might amend its complaint to harmonize with what the answer admits. It is quite obvious that the alleged variance did not mislead the defendant to its prejudice.

In this respondent's complaint there was a failure to allege a fund subject to liens. Respondent meets the objection by resort to allegations found in other complaints and by the considerations set forth under the Olson-Mahoney claim. This, we think, under the rule governing in a consolidated action, was allowable. This rule we understand to be that the effect of the order of consolidation is to unite the causes of action so as to constitute one cause of action and one pleading, and that allegations in one complaint will remedy defects and supply omissions in another.

In speaking of an issue in *Union Lumber Co.* v. *Simon,* 150 Cal. 751, [89 Pac. 1077, 1081], the court said: "This issue affected the right of each of the plaintiffs, and its presentation in any of the original complaints became an issue in the consolidated action, and the finding and judgment thereon operated in favor of all of the plaintiffs in the same manner as if they had originally joined as plaintiffs in bringing the action with this averment in their complaint." (*Wolters* v. *Rossi,* 126 Cal. 644, [59 Pac. 143]; *Coghlan* v. *Quartararo,* 15 Cal. App. 662, [115 Pac. 664].)

It is further urged that there is a variance between the complaint and the lien. The point is that the complaint relied on a contract for recovery. The averment is: "That the following is a statement of the terms, time given and conditions of the plaintiff's contract under which it furnished said building materials, to wit: Said Condon-McGlynn Company while working on said building or structure ordered from plaintiff, for use in said building, and delivered the same and charged therefor the actual value and market rate thereof."

The lien sets forth the character of the materials and their value and that no part of the same has been paid, etc.: "That the following is a statement of the terms, time given and conditions on which said building material was furnished, to wit: From time to time while said Condon-McGlynn Company were engaged in the construction of said building its duly authorized agent ordered from claimant for use in said building said material, to wit: Said crushed rock, and claimant furnished and delivered the same upon the order of said Condon & McGlynn Company and charged therefor the sum of six hundred and fifty dollars."

The lien says nothing about a contract, but the law implied a promise to pay. The complaint stated the facts the same way, but chose to say that the terms, time given and conditions *of the contract* were, etc., and it then follows the lien. We cannot assume that the pleader meant a contract other than such as would be implied from the facts stated.

### FORD AND MALOTT CLAIM.

The only objection urged to this claim is that the allegation as to the work done and materials on hand at the cessation of work is insufficiently stated. What has been said in the preceding cases upon the point applies here.

SANTA CRUZ PORTLAND CEMENT COMPANY CLAIM.

As to this claim, it is alleged that there is a material variance between the claim of lien and the evidence and that its statements are inconsistent in this—"it alleges that 2042½ barrels of cement were furnished, which at $1.75, the contract price, would be $3,574.37½. But the lien alleges that the reasonable value was $3,849.68."

The lien states that respondent "furnished materials consisting of 2042½ barrels of standard Portland cement of the reasonable value of $3,849.68, to be used," etc., under a certain written agreement. "Price. One dollar and seventy-five cents ($1.75) per barrel f. o. b. cars at factory." Shipments to be made "in carload lots as ordered by buyer." It was stated that "three hundred and seventy-five pounds net of cement, packed in four bags constitute a barrel"; that the seller would pay five cents for each bag returned to the factories in good condition; seller to pay freight on returned bags; that no part of said $3,849.68 has been paid except the sum of five hundred dollars, and there are no offsets except $29.25 due to said contractors for sacks returned, and there is now due and unpaid the sum of $3,320.43, etc.

The testimony was that respondent delivered to the contractors 2042½ barrels of cement under the contract; "that the total price of the same was $3,849.68; that the reasonable value of said cement was $3,849.68." It appeared that 722½ barrels were furnished not at the factory, as the contract called for, but from a warehouse in San Francisco, where respondent had it in storage; that the contractors were charged for all the cement at the rate of $1.75 per barrel except as to the 722½ barrels there was added the freight from the factory to the city, $114.56, and warehouse charges, $16.25, and five cents each for 2042 sacks, $144.50; that the 722½ barrels were furnished from the warehouse at the contractors' request "and they agreed to pay therefor the contract rate of $1.75 per barrel plus the freight, warehouse charges and five cents for each sack. That 2042½ barrels was all the cement ordered by the Condon-McGlynn Company "and it was up to standard in every respect." The witness testified that there was due at the commencement of the suit $3,320.43, from which should be deducted for sacks returned $479.20, leaving due $2,841.23. It thus appears that respond-

ent charged the contract price for the cement, $3,574.37, to which was added $275.31, being the freight and warehouse charges on the cement. The notice very clearly stated that the contract called for cement at an agreed price per barrel delivered at the factory f. o. b. cars. Nothing was said in the notice of lien of any other agreement, or that delivery might be made at San Francisco at the contract price plus freight and warehouse charges. This arrangement as to part of the cement might have been equally advantageous to the contractors, and as between respondent and the contractors was proper enough, but the defendant had a right to rely upon the terms stated in the notice of lien, for the purpose of the lien is to inform defendant of the extent of the lienor's claim. The notice here informed the defendant that the contractor had agreed to pay $1.75 per barrel for the cement at the factory, but the owner was not informed that as to part of the cement a different agreement was made which, if enforced against defendant, would add materially to its liability. That all of the cement was not delivered at the factory is not material, as the price charged was the same at the factory and at San Francisco. The amount of respondent's claim, we think, should be ascertained without including the charges for freight and warehousing.

## WILLIAM CRONAN CLAIM.

The point made is that the allegation of the complaint is insufficient to support the judgment under section 1200 of the Code of Civil Procedure. This allegation is as follows: "That at the time of said cessation from labor upon said unfinished contract and said unfinished building or structure, there was in the hands of the said defendant, Dunne Investment Company, after deducting the payments actually due and made on said contract between said defendant, Dunne Investment Company, and Daniel E. Condon and Charles J. McGlynn, as hereinbefore alleged for the value of the work and materials then already done and furnished, estimated according to the whole contract price, sufficient money to pay the claim and lien of plaintiff herein."

Whatever of insufficiency there may be in these averments it was cured by sufficient allegations in other complaints. It is further contended that the claim as allowed of $2,179.50 must be reduced to $1,714.

It appears that claimant had a specific contract for materials and work for the specific price of $3,165 and that, up to July, 1909, when the work on the building was abandoned, the materials and work of claimant amounted to $2,179.50, on which no payment had been made. The notice of lien set out the contract as above stated and that the labor and materials done and furnished under said contract at the cessation of work on the building was $2,179.50, which the lien states was the reasonable value "estimated according to the market value thereof, also measured according to said contract price." It appeared that after abandonment claimant made a contract with Charles S. Wright to complete the work originally contracted for by claimant but at an increased compensation, the reason for which was fully explained. The witness testified: "At the time of making out his claim of lien of $2,179.50, I took the same figures to make that item as I took in making the original bid" and "that the value of the materials already in at the time of the abandonment, based upon the contract price, was $2,179.50." It was brought out, on cross-examination of the witness, that if he had figured in making the original contract as he explained would have given him the real value of the job, "the estimate would have been the sum of $4,018.18, but I made a contract for $3,165.00. That the value of each item that I did would be the proportion that I estimated it based upon the proportion of $3,165.00 to $4,018.18." Upon this testimony appellant says that he "can claim only 3165/4018 of the amount, or $1,714." This contention is based upon what might have been and not on what was the fact. We cannot see that respondent's contract with Wright to complete the work agreed upon originally cuts any figure. When the abandonment occurred respondent had done certain work and furnished certain materials under his contract and, as was testified, "all of these materials were furnished to the building and actually used in the building, and that all the labor was used in preparing the materials and installing them in the building," and "that there were no materials on the ground at the time of the abandonment to his knowledge, and that none of the materials were hauled away after the abandonment." In this condition of the facts we think the finding of the court supported.

### THE BERGER MANUFACTURING COMPANY CLAIM.

In alleging the value of the work which had been done, as stated in the first count, the complaint, it is claimed, omitted the element of proportion to the contract price, as also the amount paid; that the complaint alleged that, on July 12, 1909, the contractors "ceased the construction of the building or structure and never thereafter resumed the construction thereof," and there is no allegation of completion. But it was alleged that the lien was filed December 7, 1909, more than 120 days from the time of the cessation of labor as alleged. As to the second count in this complaint, it is claimed that there is no allegation of any fund as required by section 1200 of the Code of Civil Procedure.

These averments of the complaint as to the fund were not challenged for insufficiency. The facts as we have seen as to the cessation of labor, the taking over of the work by defendant soon thereafter, and the completion of the building are all hereinbefore pointed out and, as we understand the decisions, all the plaintiffs may have the benefit of them.

### THE VERMONT MARBLE COMPANY CLAIM.

It is claimed that the first count of the complaint does not state a cause of action for the reasons urged to the complaint in the case of William Cronan. It is also objected to the second count of the complaint that it "does not allege that the lien contained a statement of the terms, time given, and conditions of the contract." The complaint states that the notice of lien was duly recorded, giving the page of record, and the lien was made part of the complaint and contained a full statement of the terms, time given, and conditions of the contract, and was received in evidence. It is true that the complaint does not set forth the terms, time given, and conditions of the contract, but it referred to the notice of lien, and alleged that it contained "a correct statement of the demand of plaintiff for said labor performed and said materials furnished after deducting all just credits and offsets" and, as remarked above, the lien was made part of the complaint.

Appellant relies upon *Davis* v. *Treacy,* 8 Cal. App. 395, [97 Pac. 78]. Very properly the court said in that case: "The complaint is at least unique." It was held insufficient, on

demurrer, to state a cause of action, because there was "absolutely nothing in the complaint to show what plaintiff's 'claim,' or 'lien,' as he styles it, filed with the recorder, contained, save the description of the property sought to be charged, or that it contained anything save such description." It does not appear that the lien was made part of the complaint and, as the court said, it "utterly fails to show a compliance with the provisions of section 1187, C. C. P., and for this reason fails to set forth a cause of action for the foreclosure of a mechanic's or laborer's lien."

In the present case there was no demurrer to the complaint. The only objection to the lien as evidence was that there was a material variance between the lien pleaded and that the lien was filed too late, both of which objections were properly overruled. It is very certain that no prejudice accrued to defendant from the alleged omission of allegations in the complaint, and on the evidence but one judgment could have been rendered. We think section 475 of the Code of Civil Procedure framed in accordance with section 4½, article VI, of the constitution should apply in this case. (See *Vallejo & Northern R. R. Co.* v. *Reed Orchard Co.*, 169 Cal. 545, [147 Pac. 238].)

As to the claims of J. P. M. Phillips and Bay Development Company the objections have been considered in other cases.

Finally, the claim of the San Francisco Teaming Company is attacked: First, because the complaint does not contain any allegation of abandonment. This objection has been previously noticed, and it was shown that other complaints contained ample allegations as to the fact as well also the answers and, besides, the findings are clear upon the point. Second, it is urged that the lien does not state the terms, time given, or conditions of the contract as shown by the contract, and there is a material variance between the lien and the evidence. (Citing *California Portland Cement Co.* v. *Wentworth Hotel Co.*, 16 Cal. App. 692, 713, [118 Pac. 103, 113].) The lien states that Condon-McGlynn Company "entered into a contract on or about the 1st day of December, 1908, for labor as aforesaid, sand and material for said building with said San Francisco Teaming Company, the claimant herein, by which said labor, sand and material were furnished and the following is a statement of the terms, time given and con-

ditions of said contract, to wit: Said claimant agreed to furnish certain labor, sand and material for said building; that said labor, sand and material were to be paid for in cash upon demand at any time after said labor had been performed and at any time after said sand and material had been delivered; that said sand and material were delivered," etc.; "that the total amount of the claim of San Francisco Teaming Company for sand, labor and material furnished as aforesaid is $631.12; that $300.00 has been paid on account thereof and that the sum of $331.12 is still due, owing," etc. The lien contained no statement as to the price to be paid for the sand or materials except as above. The points made are: (1) That the evidence showed an agreement for sand at one dollar per load, and teams at the ruling market rate, and hence the lien does not contain a statement of the terms of the contract; (2) the variance between the allegations of the lien.and the evidence is a material one.

Witness Donaldson, respondent's bookkeeper, testified that there was an agreement to "supply them with sand at one dollar a load; teams at the running rate that was in existence at that time." Later in his testimony he corrected the above statement and testified that he knew of no specific price agreed upon; that most of the details were handled through him, but that he had no recollection of the price being mentioned. The substance of this witness' testimony was that the contractors verbally as needed ordered teams and sand and charges were made "at the running rates"—the "ordinary market running rate." Witness Condon, one of the contractors, testified that he did not remember that there was a written contract with respondent but that the understanding was verbal; the sand was to be delivered "at so much a load depending on the haul, the minimum would be one dollar a load"; that there was no particular agreement as to the price the teams were to be paid; that the day after hauling a statement would be made and if the price "showed too high a price, it was sent back for correction"; the price payable for sand depended upon the distance it was hauled and the teams were to be paid "the current rate" and "a dollar a yard for hauling the sand a reasonable distance." The bills from time to time were made out, as we understand the testimony, "at the running rates" for the sand and team-

ing, amounting to $631.12, of which three hundred dollars
was paid, leaving a balance of $331.12. We think it fairly
inferable from the testimony that the contract, such as ex-
isted, was an implied one, and that payment was to be made
upon the performance of the labor or delivery of the sand,
and both were to be paid at "the going rates" which the
testimony established. The real question, then, is—Is the
notice of lien fatally defective in not stating the terms of
payment or price at which the labor was to be done and the
sand to be furnished? As the facts appear, the price could
not have been stated, since no price was agreed upon. The
contractors simply gave orders for the teams and sand as
required, and the obligation on their part was such as the
law would imply. Such an implied obligation would clearly
arise to pay on delivery or performance by respondent, and
it would seem to us that there would also arise an implied
obligation to pay the current or going rates for the labor or
materials thus furnished.

In the case of *Blanck* v. *Commonwealth Amusement Corp.,*
19 Cal. App. 720, 726, [127 Pac. 805], it appeared "in some
instances that no price was agreed upon," but as it appeared
that the price was the reasonable value, the omission was
held not to be fatal. There is in the present case no direct
and specific statement that the price was reasonable, but we
think when labor is done or materials furnished at the cur-
rent or going rates, or, in other words, the market rates, it
may be assumed that they were reasonable in absence of any
evidence to the contrary.

Section 1187 of the Code of Civil Procedure requires of
the lienor that he make a statement in the notice "of the
terms, time given and conditions of his contract." The no-
tice gave the terms as cash and, as to the time, payment was
to be on delivery of the materials or performance of the labor.
Full and literal compliance with the statute would have re-
quired a statement that the price to be paid was the current
or market rate at the time for the labor and materials. But
as in fact this is what was claimed, and what was understood
by the parties, and would be implied as the contract in the
absence of a specific agreement otherwise, we are unwilling
to hold that the omission in the notice was fatal to its validity.
(*Barrett-Hicks Co.* v. *Glas,* 14 Cal. App. 289, [111 Pac. 760].)

The lien adjudged in favor of the Santa Cruz Portland Cement Company for the sum of $2,760.80 should be reduced by the sum of $275.31; otherwise, the judgment is affirmed.

Hart, J., and Ellison, J., *pro tem.*, concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on June 30, 1916.